Richardson, Ch. J.,
delivered the opinion of the court:
This case was transmitted to the court by the Secretary of the Interior, under the provisions of the second section of the <£ Bowman Act ” of 1883, chapter 110 (22 Stat. L., 486), which authorizes the head of any Executive Department to transmit to the Court of Claims any claim or matter pending therein which may involve controverted questions of law or fact.
It is urged on the part of the defendants that the controversy involved in the case was finally determined and settled by a former Secretary of the Interior, and could not be re-opened, reexamined, and reconsidered by his successor in office, and that this court can do no more under such a transmission than to *123 make a- finding to that effect, and to decide and report to the Secretary of the Interior for his guidance and action that the matter is res judicata and he has no further jurisdiction therein.
It has long been held in the Executive Departments that when a claim or controversy between the United States and individuals therein pending has once been fully considered, and final action and determination had thereon by any executive officer having jurisdiction of the same, it can not be re-opened, set aside, and a different result ordered by any successor of such officer, except for fraud, manifest error on the face of the proceedings, such as a mathematical miscalculation or newly discovered evidence, presented within a reasonable time and under such circumstances as would be a sufficient cause for granting a new trial in a court of law. This ruling and practice of the Departments has been approved elsewhere and has been sustained by the courts. (9 Opin. Att’y. Gen., 34; 12 id., 172-358; 14 id., 387, 450; 14 id., 275; 15 Pet., 401; Lavalette's Case, 1 O. Ols. R., 147; Jackson's Case, 19 id., 504; State of Illinois Case, 20 id., 342; McKee’s Case, 12 id., 560; Day's Case 21 id., 264, and the opinion of the Judiciary Committee of the Senate, reported by Senator and Judge David Davis, quoted in Jackson’s Case above referred to.)
But it has never been doubted that any public officer in the Departments may correct his own errors, and open, reconsider, and reverse in whole or in part any case decided by himself.
It appears that the present controversy arose when Mr. Delano was Secretary of the Interior. The claimants presented an account for $42,236.77, which was examined and reported upon by the Commissioner of Indian Affairs and other officers of the Department, and when it reached the Secretary he made upon it the following indorsement (Finding IV):
“Dep’t or the Interior, Sept. 20,1875.
“The within account is hereby allowed for $5,200, in accordance with the action of the Commissioner of Indian Affairs and the recommendation of the Board of Indian Commissioners, without prejudice to the parties to claim a balance to be still due them.
“C. Delano, Secretary.”
This certainly was not a final determination of the merits of the claim, but left the same open for future adjustment.
Subsequently the matter was again considered, reported upon *124 by the Commissioner of Indian Affairs to the Secretary of the Interior, then Mr. Secretary Chandler, recommending the additional payment of $9,500. Upon that report and recommendation, the Secretary, on the 24th of November, 18T5, in a communication set out in fall at the end of the fourth finding, decided that the contract with the Indians upon which the claim was founded had never been legally approved by the Secretary of the Interior and Commissioner of Indian Affairs, as required by law, and that he was satisfied that claimants “had already been paid all that they would justly be entitled to receive for the services rendered by them in behalf of the Eastern Band of Cherokees, or any individual thereof, if those ■contracts had been duly executed and approved.”
Within a few months after that decision, on the 27 th of July, 187G, while Mr. Chandler was still Secretary, the Acting Secretary addressed a letter to the Attorney-G-eneral, set out in full in Finding Y, in which, after stating the proceedings of the Department down to November 24, 1875, when Secretary Chandler disposed of the matter by his letter of that date, he says: “Since that date the Secretary has ordered the case reopened, and granted a rehearing to said claimants. Their claim is now pending before him for decision. I therefore desire your opinion upon the following questions,” then and there propounded.
The Acting Secretary was, for the time being and in this matter, the lawful head of the Department, and his action in referring the case to the Attorney-General, with the statement that the Secretary had ordered it to be re-opened and had granted a rehearing, is conclusive proof of that fact, whether it was done by himself or by order of Secretary Chandler, either in writing or orally. It was so regarded by Secretary Teller, who treated it as pending and unfinished business, and after giving some consideration to it, finally transferred it to this court under the Bowman Act.
In onr opinion the case was not res judicata, but was pending when so transmitted, and we are required to pass upon the merits.
The defendants contend that the sixth article of the contract upon which this elaim is founded, although approved as required by Revised Statutes, section 2103, the approval was not warranted by law and is of no force, because, as they argue, *125 tbe whole contract of six articles was an entirety and could be approved or disapproved in whole and not in separate parts. This question first arose in the Interior Department under the administration of Secretary Chandler, and, with other questions upon the same and another contract between the parties, not material to this case, was referred to the Attorney-General for his opinion.
The Attorney-General, in an opinion approved by him, and written and signed by Solicitor-General Phillips, replied as follows:
“ In answer to the first question, I have to say that the above contract with Boss was duly approved. Eollins contracted to do six distinct things upon-a consideration apportioned to each. The authorities hoid, uniformly, I believe, that such a contract is separable. Therefore, in case it needs approval or ratification, this may be limited to one of such things alone, or to more than one, or may extend to all, with the effect of validating the contract for the part approved and no more. (15 Opin. Att’y-Gen., 589.)”
It is sufficient to say that we concur in these views, and hold the contract to have been legally approved.
The defendants further object that John Eoss, the principal' chief, who executed the contract on the part Of the Indians, was without authority to agree to the provisions of the sixth article, and so that article is not binding upon the Indians.
The resolutions of the council, set out in Finding I, do not seem to cover exactly the matters contained in the sixth article of the contract, but the principal chief, Eoss, in mating the contract, did not rely wholly upon those resolutions, but claimed in the contract itself to act “for and on behalf of the Eastern Band of the Cfterokees, and by virtue of his authority as chief of said band.”
What were the powers and duties of the chief of the band do not appear in the case, and we have no means of knowing whether or not he exceeded his authority. But in view of the fact that his authority was recognized by the district judge of the western district of North Carolina, before whom this contract was executed, as required by law, and that the contract was approved by the Commissioner of Indian Affairs and the Secretary of the Interior, and that his authority was never questioned in all the controversies between the parties while the case was long pending in the Interior Department, and *126 that the Indians have had the benefit of the claimants’ services and aré enjoying the fruits of their labor under the contract, we are constrained to hold that his authority is sufficiently established.
The principal controversy between the parties in the Interior Department related to the value of the lands acquired for the Indians. That we have established by the findings; and no question of law arises thereon.
The opinion of the court is that the claimants are entitled to the sum of $10,176.77 beyond what has been paid to them. The clerk will certify these findings, conclusion of law, and this opinion to the Secretary of the Interior for his guidance and action.