## SPENCER v. UNITED STATES.
### No. 49438.

United States Court of Claims.

Oct. 2, 1951.

---

Thomas H. King, Washington, D. C., for plaintiff.

Paris T. Houston, Washington, D. C., and Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The plaintiff sues to recover disability retirement pay for the period between October 4, 1944, and December 31, 1949, as a Reserve Army officer on the ground that he was certified by the Secretary of War to the Veterans' Administration for disability retirement pay. Plaintiff contends that this certification was a final order by the Secretary of War and could be revoked only upon a showing of fraud, which was not present in his case. It is defendant's contention that certain medical reports of the Veterans' Administration hereinafter referred to constituted sufficient new evidence to justify the reopening of the proceedings, and that in any event the retirement orders of a Reserve officer are not final orders.

Plaintiff had been commissioned a Captain in the Organized Reserve Corps of the Army of the United States during World War I, and served various periods of active duty from 1918 to 1940 as part of his Reserve training activities.

On August 14, 1940, he was given a physical examination by Army medical officers and was found to be suffering from arterial hypertension, or high blood pressure, which, he was advised by these medical officers could be corrected within one year. A subsequent Army medical examination in October 1940, found that this disqualification had been removed.

On December 11, 1940, plaintiff submitted to a physical examination by Veterans' Administration physicians, and that examination showed that he had arterial hypertension. At this time plaintiff stated to the medical examiner that he had had high blood pressure. However, on December 13, 1940, plaintiff was again examined by Army physicians, and on this occasion was found to be fit for active duty. Plaintiff entered on active duty as a Lieutenant Colonel on March 24, 1941, at which time he was given a Final Type physical examination and found fit for *extended* active duty.

On June 3, 1944, plaintiff, while in active service, entered a military hospital suffering from physical exhaustion. Shortly thereafter he was ordered before an Army Retiring Board for a hearing. The Board, on the basis of plaintiff's statements that he had not had any trouble before being called to active service, and on the basis of extensive medical reports before it, entered findings that plaintiff was suffering from arterial hypertension which permanently incapacitated him, and that the incapacity was an incident of the service. Subsequent proceedings before the same Retiring Board in September 1944 resulted in the same conclusions.

These findings were approved by the Secretary of War on October 30, 1944, who on January 12, 1945, officially certified plaintiff to the Veterans' Administration to receive retirement pay, in the amount of $362.50 monthly, effective from October 4, 1944.

On March 19, 1945, this certification was revoked by the Secretary of War and plaintiff was notified that his records were being returned to the Army Retiring Board for

further proceedings in view of additional evidence consisting of the report of plaintiff's physical examination by the Veterans' Administration on December 11, 1940. The reconvened Retiring Board, after reviewing plaintiff's medical records, including the report of the Veterans' Administration examination, again found, as had the first Retiring Board, that although plaintiff had suffered from hypertension prior to his acceptance for active service in 1941, that condition had been sufficiently alleviated to warrant his acceptance for extended active duty in 1941, and that the hypertension which caused his disability in 1944, was a new condition which originated while plaintiff was on active duty. These findings were disapproved by the Secretary of War.

Plaintiff then requested a review by the Disability Review Board of the action of the Secretary of War. This Board in turn reversed the findings of the retiring boards and found that plaintiff's condition had originated prior to entry on active duty, hence was not an incident of the service.

It is plaintiff's contention that when officials of the War Department, acting for the President, have made a determination that an officer is entitled to retirement and retirement pay, such decision is final and binding, leaving the officials *functus officio,* and that the proceedings can be reopened and reversed later only upon a showing of fraud, or such gross error as would amount to fraud.

In 1939, Congress enacted legislation, the purpose and intent of which were to place Reserve officers on a par with Regular Army officers as to retirement rights. Senate Report No. 80, p. 7, 76th Congress, 1st Session; Senate Report No. 1947, p. 7, 76th Congress, 3d Session. It is provided, so far as here material, in section 5 of the Act of April 3, 1939, 53 Stat. 557, as amended by the Act of December 10, 1941, 55 Stat. 796, 10 U.S.C.A. § 456, that: "All officers * * of the Army of the United States, other than the officers * * * of the Regular Army, if called or ordered into the active military service by the Federal Government for extended military service in excess of thirty days, * * * and who suffer disability or death in line of duty from disease or injury while so employed shall be deemed to have been in the active military service during such period and shall be in all respects entitled to receive the same pensions, compensation, retirement pay, and hospital benefits as are now or may hereafter be provided by law or regulation for officers * * * of corresponding grades and length of service of the Regular Army * * *."

The Act of September 26, 1941, 55 Stat. 733, 10 U.S.C.A. § 456a contains similar provisions.[1]

As these enactments were silent as to the method of administration of the retirement benefits provided thereby, Congress further provided in section 2 of the Act of September 26, 1941, supra, 55 Stat. 734, 38 U.S.C.A. § 12, that: "The duties, powers, and functions incident to the administration and payment of the benefits provided in section 456a of Title 10 are vested in the Veterans' Administration: *Provided,* That in the administration of the retirement pay provisions of said section the determination of all questions of eligibility for the benefits thereof, including all questions of law and fact relating to such eligibility, shall be made by the Secretary of War, or by someone designated by him in the War Department, in the manner, and in accordance with the standards, provided by law or regulations for Regular Army personnel * * *."[2]

---

1. "Reserve officers, Army of the United States, who were called or ordered into the active military service by the Federal Government for extended military service in excess of thirty days on or subsequent to February 28, 1925, * * and who are now disabled from disease or injury contracted or received in line of duty while so employed, shall be deemed to have been in the active military service during such period and shall be in all respects entitled to receive the same retirement pay and hospital benefits as are now or may hereafter be provided by law or regulation for officers of corresponding grades and length of service of the Regular Army." 10 U.S.C.A. § 456a. See also AR 35-3420, of March 10, 1943.

2. This enactment was a codification of similar provisions contained in Executive Order 8099, promulgated April 28, 1939,

Pursuant to the rights created by these statutes, plaintiff was initially granted the proper procedure before retiring boards. This procedure, detailed in R.S. §§ 1246–1250, 1253, 10 U.S.C.A. §§ 961–966, provides that the Secretary of War, under the President's direction, shall create Army retiring boards to conduct hearings and inquire into the disability of any officer, enter findings as to its cause, and transmit these findings to the Secretary of War for the action of the President. The procedure is the same whether an officer is a member of the Regular Army or of the Organized Reserves. Army Regulations 35–3420 of March 10, 1943, and 605–250 § 1 of March 28, 1944, in effect at the time plaintiff went before a retiring board, make no distinction between these classes of officers.[3] Army Regulations have the force of law. Hironimus v. Durant, 4 Cir., 168 F.2d 288, certiorari denied 335 U.S. 818, 69 S.Ct. 40, 93 L.Ed. 373; Gratiot v. United States, 4 How. 80, 11 L.Ed. 884. Section 36b of AR 605–250, supra, which controls the main issue in this case specifically states that, "Orders for retirement, having become effective in any case, cannot be revoked or amended."

Defendant insists, however, that § 36b, supra, applies only to Regular Army officers, but we are unable to perceive any such distinction in the wording of the regulation which refers to *any* officer, or any sound reason why there should be any distinction between Regular Army officers and Reserve officers. While it is true that following retirement for service-connected disability, Reserve officers merely revert to an inactive status with the right to retirement pay from the Veterans' Administration, whereas Regular Army retired officers are carried on a retired list and paid by the Army, this represents the only differentiation in treatment afforded them. The pur-

pose and intent of the legislation pertaining to retirement are to treat them equally, and any other interpretation would deprive the applicable words of the Statutes and the Regulations of their plain meaning. The provisions of retirement statutes affecting service personnel were enacted from motives of public policy and should not be narrowly construed. Lemley v. United States, 75 F.Supp. 248, 109 Ct.Cl. 760, 767; Hornblass v. United States, 93 Ct.Cl. 148, 156.

Ordinarily, where a government official is empowered by statute to do a particular act which would otherwise be outside the scope of his authority, such power, once exercised, is deemed exhausted and cannot be exercised again. The person possessing such a power is thereafter *functus officio*. Daniel E. Sickles et al., 19 Op. Atty. Gen. 209; Ex parte Randolph, 20 Fed. Cas. page 242, No. 11,558, 2 Brock. 473, 474.

Other orders by government officials acting in a quasi-judicial capacity, and based on similar proceedings, have been regarded as final and binding on the government even in the absence of a regulation such as § 36b of AR 605–250, supra. In United States v. Burchard, 125 U.S. 176, 179, 8 S.Ct. 832, 31 L.Ed. 662, the findings of a retiring board that Burchard was incapacitated for further active service, but not as the result of an incident of the service, were approved by the President. Later the Secretary of Navy became satisfied, upon a re-examination of the findings and a revaluation of the evidence, that the incapacity was actually the result of causes incident to the service. There is no indication that the attempted change of decision was based on newly discovered evidence, gross mistake or fraud. It was held that under the circumstances of that case, neither the Secretary of Navy nor the President could then change the

---

as amended by Executive Order 8461, promulgated June 28, 1940, C.F.R., Cum. Supp., Title 3, pp. 482 and 680.

3. AR 605–250 § 1:
"The following cases shall be referred to Army retiring boards for disposition under the provisions of these regulations:
"(a) Cases where an officer may be considered physically or mentally incapacitated for active service regardless of

whether such incapacity is or is not an incident of the service * * *."
AR 605–250 § 11:
"A retiring board may inquire into and determine the facts touching the nature and occasion of the disability of any officer * * *, and shall have such power of a court-martial and of a court of inquiry as may be necessary for that purpose."

findings. Once they had been approved, they were no longer open to review because the President's action on the findings was equivalent to the judgment of an appropriate tribunal which could not be disturbed. Cf. Potts v. United States, 125 U.S. 173, 8 S.Ct. 830, 31 L.Ed. 661. In McBlair v. United States, 19 Ct.Cl. 528, 538, a similar situation was presented. A retiring board found that McBlair did not have a service-connected disability and the President approved the findings. Subsequently the President reviewed the findings and directed that the officer be placed on the retired list. The order showed that the President had simply changed his mind as to the sufficiency of the existing evidence. The court stated that the President,

"* * * had a power to exercise in the disposition of the report, and his action thereon, made in law, the complete exercise of the full measure of authority provided by the statute. It is not a *continuing* power, but is performed to the extent of its existence by the *one* act of the President * * *.

"If the President has the right to change his approval into disapproval, when does the right cease? * * *"

In Runkle v. United States, 19 Ct.Cl. 396, 418, the court pointed out that any conclusion that the President and his executive officers possessed continuing power when acting in a quasi-judicial capacity would be ridiculous. For example, a contrary conclusion would mean that the President might revoke and withdraw his approval of a bill passed by Congress. Likewise, he would be able to restore an officer's commission without a new appointment confirmed by the Senate, which power was expressly denied him in Corson v. United States, 17 Ct.Cl. 344, 349. Cases where the President or his executive officers are performing nonjudicial functions are to be distinguished. Cf. Wisconsin Central Railroad v. United States, 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399.

The question raised here has been before the Judge Advocate General of the Army for decision on several occasions, and the opinions rendered by him have consistently held that the Secretary of War *may* rescind approval of a retiring board's findings and reopen the case in all circumstances. SPJ GA 1942, 4222, 14 Sept. 1942; id. 1942/5925, 16 Dec. 1942; id. 1943/16746, 19 Nov. 1943; id. 1943/16908, 19 Nov. 1943. However, no legal reasons are given to justify these decisions. They are, as their title indicates, merely opinions. Their foundation lies in an argument which is also emphasized by defendant, namely, that to regard retirement orders as final orders would encourage officers to suppress facts before retiring boards short of fraud, and that it would also preclude consideration by the Secretary of War or retiring boards of any substantial new evidence which might reasonably have resulted in a contrary finding.

We do not believe such to be the case. Previous decisions of this court have dispelled all such imaginary fears as unwarranted. In Haas v. United States, 67 Ct. Cl. 437, 443, the plaintiff (Haas) had been denied retired pay by a retiring board on the ground that his disabilities were due to his own misconduct. Plaintiff thereafter secured additional evidence, not considered by the original board in making its findings. This court recognized the right of the Secretary of Navy to reconsider the acts of a predecessor in office upon a showing of manifest error, subsequently discovered material evidence of sufficient probative value to raise a reasonable doubt as to the prior findings, fraud, and mathematical miscalculations. Cf. Rollins & Presbrey v. United States, 23 Ct.Cl. 106, 123. In addition, we have recognized the right of the Secretary of Navy to reopen a proceeding where the action taken was erroneous and not in accordance with law. Cook v. United States, 101 Ct.Cl. 782. The argument made by defendant that to treat retirement orders as final would result in fraud and the suppression of evidence, and prevent the proper official from correcting his errors, was also raised in the McBlair case, supra, but was dismissed with the following language:

"But it is insisted that the President must of necessity have control of the record, in order to correct mistakes which he might have made in acting without being sufficiently advised, and thereby insure to parties affected, a guarantee that injustice will not be done by hasty and inconsiderate action.

"Courts, or officers, whether acting judicially or in a mere ministerial capacity, so long as they retain jurisdiction of a subject-matter, have complete control, within the purview of their power, to deal with it, as their discretion or duty may dictate; but when it passes beyond the line of official authority, either by the duty intrusted having been performed, or by the limitation of time, then the power ceases and the mode of execution becomes fixed and irrevocable in law.

"It is a principle familiar to all, that a court once adjourned, ceases to have control of the substance of its decrees and judgments; and while matters of form may be corrected, matters of substance become crystallized into the force of judicial verity."

 The report of the Veterans' Administration as to plaintiff's condition in December 1940 (finding 5) clearly does not constitute sufficient newly discovered material evidence to justify reopening the case. Under existing Army Regulations[4] and under the decision in Robertson v. Chambers, 341 U.S. 37, 71 S.Ct. 547, the report would have been proper evidence for the board to have considered during the initial hearings.[5]

Plaintiff's Veterans' Administration physical report of December 1940 contained in essence no information not already before the Army Retiring Board. A diagnosis of hypertension was contained in the August 14, 1940, Army physical examination (finding 3), a copy of which was or should have been before the initial retiring board. A report of a subsequent Army physical examination revealed that the hypertension, to the extent that it constituted a disqualification for active service, had been removed. The Veterans' Administration physical examination followed the latter Army physical and, at most, it can only be said that it disclosed some residual hypertension. On plaintiff's final type physical by the Army medical officers a few months later, he was certified as physically fit for extended active duty. Presumably, all these reports were before the reconvened Retiring Board of April 5, 1945, and after considering this material, that Board reached the conclusion that the Veterans' Administration report of hypertension in December 1940, was not new evidence of such a nature as to require a reversal of the prior finding of service-connected disability.[6]

Under the circumstances of this case we are of the opinion that the results of the Veterans' Administration examination in December 1940, did not constitute newly discovered evidence of a nature sufficient to justify a reversal of the Board's finding that plaintiff's disability from which he was suffering at the time of his retirement proceedings had originated prior to his entry into active service and continued throughout. On the contrary, we agree with the Board that plaintiff's disability revealed by the first Army physical had been removed prior to his entry into the service, and the disability from which he was suffering in 1944, originated while he was in active service.

There is no evidence in the record that plaintiff was guilty of making any fraudulent misrepresentations to the initial board. Plaintiff had adequate reason to believe from the Army medical examinations on

---

4. Army Regulation 605–250, supra, provides:

"§ 3a. When an officer is ordered before a retiring board the Adjutant General will furnish, for consideration by the board, originals or certified copies of the complete medical history, and of all other official records affecting the health and physical condition of the officer."

5. In the Robertson case an attempt was made to use Veterans' Administration medical records in a hearing before a Retirement Review Board created by § 302(a) of the Servicemen's Readjustment

Act of 1944, 58 Stat. 287, 59 Stat. 623, 38 U.S.C.A. § 693i(a). This Review Board was granted the same powers vested in and exercised by the board whose findings were being reviewed, and in addition was authorized to base its review on all available service records. The term "service records" was construed broadly enough by the United States Supreme Court to include these Veterans' Administration medical reports.

6. The findings of this Board were without authority in law for the reasons previously stated.

December 13, 1940, and March 24, 1941, that his hypertension had been alleviated at least to the extent that he was fit for active duty on March 24, 1941, and he was therefore justified in stating to the first Retiring Board that he had experienced no trouble prior to his entry on active duty in 1941.

We conclude that in the circumstances of this case, the action of the Secretary of War in certifying plaintiff for service-connected disability retirement was final and conclusive and no justification exists for the action of the Secretary in revoking plaintiff's retirement orders. The parties have stipulated the amount due plaintiff on the basis of this conclusion, and judgment will therefore be entered in favor of plaintiff for $18,930.70. It is so ordered.

JONES, Chief Judge, and HOWELL, Judge, concur.

MADDEN, Judge (dissenting).

I assume that the Secretary of War's Disability Review Board, established pursuant to Section 302 of the Servicemen's Readjustment Act of 1944 was more competent than this Court to determine whether the plaintiff's disability was, or was not, a result of his military service. Upon that assumption, the decision denying the plaintiff retirement pay was right on the merits. The question, then, is whether the duly constituted authorities to decide such questions, having first made a wrong decision in the plaintiff's favor, were without power to make a right decision against him.

The doctrine that a continuing obligation to pay, in monthly installments throughout the remainder of a man's life an amount of money which may become very large indeed, can be irrevocably created by a mistaken decision, is strong doctrine. It carries over into the administrative procedure of the military establishment the rule of *res adjudicata* of court procedure, as it might apply to an installment contract for rent or for periodic interest on a bond. I think it is a mistake to so harden the arteries of administrative procedure. The doctrine will arise to plague deserving officers who, unable to persuade their Retirement Board or Appeal Board that their disabilities are service connected, find that

their later attempts to do so, which might otherwise have been successful, are met by the statement that these Boards are, as to them, *functus officio*.

I think the decision of the Court is not required by the statutory provision for the equalization of the status of Reserve Officers and officers of the Army of the United States with those of the Regular Army. When an officer of the Regular Army is retired for disability, it makes no difference, except in certain unusual cases whether his disability is service-connected or not. He has devoted his life to the Army, and is entitled to be maintained by the Army. He becomes a Retired Officer with Retired Pay, still subject to Army discipline and Court Martial. But a Reserve Officer or an officer of the Army of the United States, when retired for disability, becomes again a civilian. If his disability is service-connected he is, by statute, entitled to the same pay as if he had been an officer of the Regular Army. But he is not in the army in a retired status. A mistake by a Retirement Board as to whether the disability for which a Regular Army officer is retired was, or was not, service-connected, does not, again, except in certain unusual cases, cost the officer or the Government a penny. The Regular Army officer, once fully retired, cannot be put back into full active service without nomination by the President and confirmation by the Senate since his status as a Retired Officer is fixed by statute.

In many respects, then, there has been no equalization of the status of all officers in the various parts of the military establishment. The equality to which the plaintiff was entitled was that if his disability was service-connected, he was entitled to the same pay after his discharge that a Regular Army officer would have been entitled to upon retirement, whether or not the latter's disability was service-connected. But to give the plaintiff a permanent monthly payment because of a mistaken decision, when such a decision would have had no consequences whatever in the case of a Regular Army officer, is doing much more than equalizing their status.

I recognize that the decision of the court is supported by strong precedents, but I

think the time has come to re-examine the precedents and to attempt to develop a doctrine in keeping with current military conditions.

WHITAKER, Judge, concurs in the foregoing dissent.