# CLOSSON

*v.*

## THE UNITED STATES, EX REL. ARMES.

MILITARY LAW; OFFENCES AGAINST ARMY REGULATION; RETIRED ARMY OFFICERS SUBJECT TO COURT MARTIAL; HABEAS CORPUS.

1. A retired army officer is subject to arrest and detention for court martial for an offence against the articles of war, and the fact that he is taken from his house by order of his commanding officer and held in close confinement in barracks without charges being preferred against him will not justify the civil authorities releasing him on *habeas corpus* proceedings.

2. The jurisdiction of a court martial called to try an officer so arrested is not ousted by the action of the officer in suing out a writ of *habeas corpus*, although the time limited for his trial by the articles of war expires before the final determination of the *habeas corpus* proceedings.

No. 522. Submitted December 2, 1895. Decided January 6, 1896.

HEARING on an appeal by the respondent from a judgment discharging the petitioner for a writ of *habeas corpus* from custody. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a judgment of the Supreme Court of the District of Columbia upon a writ of *habeas corpus.*

The appellee, George A. Armes, is an officer of the army of the United States on the retired list, on which he was placed,

with the rank of captain, on September 15, 1883. On September 27, 1895, he addressed and caused to be delivered to Lieutenant-General John M. Schofield, then commanding the army of the United States, and at the same time acting as Secretary of War in the absence of Secretary Lamont, a letter of an offensive character, in which he called the attention of General Schofield, who was then about to be retired from active service, to various alleged persecutions by him of the writer, charging him with the manufacture of false testimony and various attempts to ruin and disgrace him (Armes), and demanding an apology before his retirement. The letter was delivered by Armes in person to a messenger in the War Department, who delivered it to General Schofield. The latter, as acting Secretary of War, deeming that a grave act of military insubordination and violation of military discipline had been committed in his presence, immediately ordered the arrest of Armes, and his confinement in close arrest at the Washington Barracks, which were under the command of the appellant, Colonel Henry Whitney Closson, an officer of the United States Army. Armes was thereupon arrested, taken under guard from his residence in Washington, and confined in the barracks.

On the next day, September, 28, 1895, a writ of *habeas corpus* was sued out before one of justices of the Supreme Court of the District of Columbia ; and Colonel Closson immediately produced the prisoner in court. The justice before whom he was brought thereupon released Armes upon his own recognizance ; and postponed the hearing of the case until October 5, 1895.

Charges and specifications were preferred against Armes, the first charge being of " conduct to the prejudice of good order and military discipline," and the second of " conduct unbecoming an officer and gentleman ;" the specification under each charge being the writing of the letter to General Schofield, hereinbefore mentioned, and which was set forth *verbatim.* A copy of these charges and specifications was given to Colonel Closson for delivery to the appellee

on October 2, 1895, before the amended return in this case was made, and this copy was duly forwarded to Armes. No further action, however, seems to have been taken by the military authorities.

After argument, the justice of the Supreme Court of the District of Columbia before whom the hearing was had, discharged the appellee from custody ; and from the order of discharge this present appeal has been duly prosecuted.

*Mr. J. N. Morrison* for the appellant :

1. The President of the United States is the commander in chief of the army of the United States. Section 2, article 2, of the Constitution.

2. The Secretary of War is the organ and representative of the President in his capacity as commander in chief of the army, and in all matters relating to the army. *United States* v. *Eliason,* 16 Peters, 302 ; *United States* v. *Page,* 137 U. S. 673 ; *United States* v. *Fletcher,* 148 U. S. 84 ; *Ide* v. *United States,* 150 U. S. 517 ; Digest Opinions Judge-Advocate-General (1895 ed.), 690, and the numerous cases there cited.

3. General Schofield, as acting Secretary of War, had the same power and authority as the Secretary of War would have had if he had been present and acting at the time. Supp. R. S., vol. 1, 2d ed., p. 373, par. 4.

4. " The officers of the army on the retired list " are a part of the army and subject to the rules and articles of war, and therefore under the command of the President as commander in chief of the army ; and therefore under the jurisdiction of the Secretary of War in all matters relating to them in their military capacity. R. S. U. S., secs. 1094 and 1274, and 1243 to 1260 ; *United States* v. *Fletcher,* 148 U. S. 84 ; *Runkle* v. *United States,* 122 U. S. 543.

5. " Conduct unbecoming an officer and a gentleman," and " conduct to the prejudice of good order and military

discipline"—the offences with which the appellee is charged—are offences under military law, and a court-martial has jurisdiction of them and of all members of the army. Articles of War, 61 and 62 ; Winthrop's Military Law, 1020 and 1035.

6. The appellee being an officer of the army on the retired list, was arrested and detained in this case as a military man, under the authority of the acting Secretary of War as the organ of the President as commander in chief of the army, and for the purpose of bringing him to trial before a court-martial for a military offence ; and the legality of the arrest and detention must therefore be determined by military law—the law which regulates proceedings, etc., in court-martial cases and other military matters—and not by the ordinary law of the District of Columbia which is administered by the civil courts. Sixty-fifth Article of War ; Winthrop's Military Law, 137 ; Simmons on Courts-Martial, sec. 352 ; Clode's Military and Martial Law, 113 ; De Hart, 72 ; *In re Bogart*, 3 Federal Cases, 798 ; *In re Esmond*, 5 Mackey, 74 ; *Dynes* v. *Hoover*, 20 Howard, 78 ; *Tyler* v. *Pomeroy*, 8 Allen, 484 ; *United States* v. *Fletcher*, 148 U. S. 91 ; *Keys* v. *United States*, 109 U. S. 336 ; *Smith* v. *Whitney*, 116 U. S. 167.

7. The ordinary law of the District of Columbia administered by the civil courts being composed of the common law and certain statutes of England, together with additions thereto made by the legislature of Maryland and the Congress of the United States, constitutes a system of law which is separate and distinct from the system of law known as military law, and is different from it in many very important respects.

8. One of the most important respects in which the ordinary law of this District is different from military law is, that while the former contains all those rules and principles relating to the rights of personal liberty contained in the common law of England, which were affirmed and declared by Magna Charta, the Petition of Right, and the amend-

ments to the Constitution of the United States, the latter does not, except in so far as they have been added to it by the articles of war, and subject to that exception they are not known to or recognized by it. The authorities cited to support the preceding statement of law support this one.

9. " The declaration in the various constitutions and declarations of rights, that a party is entitled to a speedy trial by an impartial jury, etc., is understood to refer to such crimes and accusations as have, by the regular course of the law and the established modes of procedure, been the subject of jury trial, and does not embrace every species of accusations, involving either criminal or penal consequences." Church on Habeas Corpus, 423 ; *State* v. *Glenn*, 54 Md. 572 ; *Ex parte Marx*, 86 Va. 40 ; *Callan* v. *Wilson*, 127 U. S. 540.

10. Courts-martial, subject to the action of the military commander, have exclusive jurisdiction in all proceedings against military persons for military offences ; and all rulings, decisions and judgments, and other action by them and other proper military authorities, within the scope of that jurisdiction—all things, in fact, that they do by an exercise of their jurisdiction—are valid and binding; and the civil courts cannot reverse or review or correct them, or otherwise relieve parties from the effect of them on the writ of *habeas corpus.* *In re Bogart*, 3 Federal Cases, 798 ; *In re Esmond*, 5 Mackey, 74 ; *Dynes* v. *Hoover*, 20 Howard, 78 ; *Tyler* v. *Pomeroy*, 8 Allen, 484 ; *United States* v. *Fletcher*, 148 U. S. 91 ; *Keys* v. *United States*, 109 U. S. 336 ; *Smith* v. *Whitney*, 116 U. S. 167 ; Church on Habeas Corpus, pp. 502 to 505, and 561, and the language of Attorney-General Cushing there quoted.

11. " No acts of military officers or tribunals, within the scope of their jurisdiction, can be revised, set aside, or punished, civilly or criminally, by a court of common law." Justice GRAY in *Tyler* v. *Pomeroy*, 8 Allen, 484, citing *Leonard* v. *Shields*, 1 McArthur on Courts-Martial, 159, note 296 ; 2 Id. 263, 264 ; *Grant* v. *Gould*, 2 H. Bl. 69 ;

*Bailey* v. *Warden*, 4 M. and S. 400; *Walton* v. *Gavin*, 16 Q. B. 48; *Luther* v. *Borden*, 7 How. 45, 46; *Wilkes* v. *Dinsman*, 7 How. 89; *Dinsman* v. *Wilkes*, 12 Howard, 403, 404; *Dynes* v. *Hoover*, 20 How. 78.

12. When, therefore, this court finds that the appellee is a part of the army, and is "subject to the rules and articles of war and to trial by court-martial for any breaches thereof," and that his arrest and detention are a part of a proceeding against him, as a military person, by military authorities, to bring him to trial before a court-martial for a military offence, and that arrest and detention of the accused are a recognized portion of the proceedings to bring a person to trial before court-martial, it ought to go no further, for its jurisdiction in this case ends there. *In re Bogart, In re Esmond,* and *Dynes* v. *Hoover*, cited above; also, *Ex parte Bigelow*, 113 U. S. 328; *Grignon* v. *Astor*, 43 U. S. 338; *Ex parte Watkins*, 7 Peters, 572; *United States* v. *Arredono*, 6 Peters, 709; *State of Rhode Island* v. *State of Massachusetts*, 12 Peters, 718; *Ex parte Watkins*, 3 Peters, 205; *Kendall* v. *United States*, 12 Peters, 623.

13. Arrest and detention of the accused are a recognized part of the proceedings in bringing an officer of the army before a court-martial for trial in all cases and for all kinds of military offences without regard to whether they are serious or trivial, and the character of the arrest and the manner of the detention are to be determined by the commanding officer ordering the same. Winthrop's Military Law, vol. 1, pp. 137 to 156; Adye on Courts-Martial, 143; Tytler on Military Law, 199 to 203, inclusive; Sixty-fifth and Seventy-first Articles of War; Army Regulations of 1889, Nos. 990 to 1000. As to the last sentence see especially Clode's Military Law, sections 24 and 25 (pp. 92 and 93, and the authorities there cited, *Dawkins* v. *Rokey*, 8 L. R. (Q. B.) 262; *Sutton* v. *Johnstone*, 1 T. R., and p. 95 Clode's Military Law, and authorities there cited; also pp. 111 to 119, inclusive. *In re Blake*, 2 Maux and Sel. p. 428.

14. A commanding officer who is responsible for the discipline of the army under him, and who has the custody and control of every member of that army to the extent necessary to maintain that discipline, has authority to arrest and bring to trial before a court-martial, for a breach of .discipline, any member of his army, without any subordinate having first accused that member of the breach of discipline. The commander's power in this respect—to thus maintain the discipline for which he is responsible—does not depend on an accusation being made or any other such action being taken by any subordinate.    It is only necessary for him to have knowledge of the breach of discipline and of the probable identity of the aggressor.    It is his duty to maintain discipline, and this is a necessary means of doing so.    Winthrop's Military Law, vol. 1, p. 137; Clode's Military Law, section 25, p. 93, and authorities cited; section 17, p. 80; and section 18, p. 81, and authorities cited.    See the title, " Arrest," in any work on military law; American and English Encyclopedia of Law, vol. 15, pp. 430 to 434, and notes, subject " Military law."

15. The question whether particular acts charged against an officer of the army as " conduct to the prejudice of good order and military discipline" amount to that offence, and the question whether particular acts charged against an officer of the army as " conduct unbecoming an officer and a gentleman " amount to that offence, are questions to be decided by courts-martial according to military law by an *exercise* of their jurisdiction.    Clode's Military Law, 81; *Dawkins* v. *Rokeby*, 4 Fos. and Fin. 831; *Grant* v. *Gould*, 1 H. B., p. 100; *United States* v. *Fletcher*, 148 U. S. 84; *Smith* v. *Whitney*, 116 U. S. 178 and 179; *Martin* v. *Mott*, 12 Wheaton, 19; *Dynes* v. *Hoover*, 20 Howard, 65 to 82.

16. An officer of the army who is put in arrest for the purpose of bringing him before a court-martial for trial is not entitled to be informed, at the time of the arrest, of the cause of the same.    Winthrop's Military Law, vol. 1, p. 137; Digest of Opinions of the Judge-Advocates-General (1895 ed.), p. 169.

17. Officers who have not " barracks, quarters, or tents " at all may be arrested and confined for the purpose of bringing them before a court-martial for trial, notwithstanding the Sixty-fifth Article of War provides that " officers charged with crime shall be arrested and confined in *their* barracks, quarters, or tents." And officers who have " barracks, quarters, or tents " may, by order of the commanding officer, be arrested and confined in " barracks, quarters or tents " other than their own, *i. e.*, other than those being used by them at the time of the arrest. " Barracks, quarters or tents " in which they were so confined would immediately and thereby become " *their* barracks, quarters, or tents." Army Regulations, 990 to 1001, especially No. 1000.

18. The word " crime " means violation of penal law, and when it is used in a given system of law it means violation of a law of that particular system. And the word " crime," when used in military law, means a violation of military law —a military offence—conduct which is unbecoming an officer and a gentleman or acts which prejudice good order and military discipline. Winthrop's Military Law, vol. 1, p. 137; *In re Esmond, supra.*

19. It is a rule of the military law that the accused be present in person before the court-martial in all cases during the whole of its proceedings, except when it is " cleared and closed " to pass upon questions, etc. Articles of War, 84, 88, 89; Army Regulations, 1037; Winthrop's Military Law, 318 to 328.

20. A writ of *habeas corpus* is not like an action to recover damages for an unlawful arrest or commitment, because in these the inquiry is whether the *arrest* and *commitment* were lawful, but the object of the writ of *habeas corpus* is to ascertain whether the prisoner can be *detained* in custody in the condition and circumstances of the case the court finds to exist at the time it is about to decide on the writ of *habeas corpus*, whether he shall be discharged or not; and if sufficient ground for his detention by the Government is shown

to exist at that time, he is not to be discharged for defects
in the original arrest and commitment.   *Nishimura Ekiu* v.
*United States*, 142 U. S. 662.

*Mr. Jackson H. Ralston* and *Mr. Frederick L. Siddons* for
the appellee :

1. The appellee, as an officer on the retired list, is a
member of the army, and as such is subject to the articles
of war, but only to such provisions of these articles as are
applicable to his status.   Article 65 can only be properly
applied to officers in the active service.   But even granting
that by any stretch of language it could affect retired offi-
cers, yet the practical application here given it violated all
military usages, and constituted an infringement of Armes'
rights for which civil courts by *habeas corpus* will always
afford redress.

An inspection of paragraph 991, article 74, shows that
the acting Secretary of War violated the law when, in-
stead of directing the supposed offending officer to " repair
at once to his tent or quarters," he forcibly conveyed him
to quarters not his own.

The fact that arrest of retired officers is not provided for
by the articles of war and army regulations does not pre-
clude their trial by court-martial.   Dig. Op. Judge Advo-
cate General : Title, Arrest.

2. The detention of the appellee without the existence
of charges invalidated his arrest and confinement.   By the
articles of war arrest should have been predicated upon
charges.   Articles 65 and 74.   The intention of Congress
was undoubtedly to declare that copies of charges should
be served as soon as possible, and at a period not exceed-
ing eight days after the arrest, leaving the courts to judge
whether the War Department acted reasonably or other-
wise.   This view is sustained by the fact that on the same
day these articles were enacted Congress by the naval ar-
ticles required service of charges at the time of the arrest,

and also by the actions of civil courts under similar circumstances.    *Wahl* v. *Walton*, 30 Minn. 506; *State* v. *Freeman*, 86 N. C. 683.

3. The civil courts may control the military by means of the writ of *habeas corpus*.    *Wales* v. *Whitney*, 114 U. S. 564.

A court-martial is a court of special and limited jurisdiction.    *Mills* v. *Martin*, 19 Johns. (N. Y.) 7; *Ex parte Watkins*, 5 Pet. 208.

The acts of a court-martial and the steps leading up to it, are only considered valid when within the prescribed jurisdiction, and all acts in excess of jurisdiction are void and subject to attack.

4. Any supposed military offence properly chargeable against the appellee may be tried by a military tribunal and in the manner prescribed by military law.    This branch of jurisprudence is made up in part of usages and customs not clearly laid down by the books, but confidently appealed to by the War Department.    But usage and custom of the service must be uniform, certain and known practice of long standing, which is reasonable and not in conflict with existing laws.    Customs of service can only be taken as precedents when intrinsically proper of themselves, and supplementary of the written law and regulations on points on which the latter are silent, and when not in direct opposition to these.    Vol. 15, p. 398, Am. & Eng. Ency.: Title, Military Law.    If there be any custom or usage of the service permitting the arrest of an officer without accusation, and denying him the right to knowledge of the cause of his arrest, such custom or usage, not being reasonable, and not being consonant with the institutions of this country, no matter how long established, must be regarded as invalid.

5. The power of Congress to establish rules and regulations governing the military service must be controlled by the Fifth Amendment to the Constitution.    Military law is supreme in military affairs, but it must provide for " due process," not arbitrary imprisonment.    The ordinary prin-

ciple of civil law, that all men are entitled to know the nature of accusations against them, and not to be arrested without known cause, must constitute " due process of law," military as well as civil.

6. If the appellee's original arrest and detention had been legal, it would not now be possible to order his return to military custody. Article of War 71. The application for *habeas corpus* in no degree delayed or hindered court-martial proceedings, arrest not being essential to them, and, admitting service of charges, the time for trial under the original arrest has gone by and it must cease. If it be considered that charges have not been served, then, more than eight days having elapsed since the original arrest, it must now cease.

7. The discharge of the appellee from further liability is asked not because of defects in the original arrest and commitment, but primarily, because no power whatever existed to make the arrest; and secondly, because he was not informed of the nature of the accusation against him. *In re Doo Woon*, 18 Fed. Rep. 898, citing *In re Farez*, 7 Blatch. 48. In the pending case no connection whatever appears between the charges and the arrest, and we are expected to believe that the appellee may have assumed them to relate to the same matter. The arrest refers to no charges, and the charges refer to no arrest. There is no process in any reasonable sense of the word and no legal commitment.

Mr. Justice MORRIS delivered the opinion of the Court:

This case is not that of a civilian ruthlessly imprisoned by arbitrary military authority. The appellee is an officer of the army of the United States, entitled to wear its uniform and to draw pay as such, and by express provision of the statute law of the United States for the government of the army, made subject to the rules and articles of war, and to trial by court-martial for any infraction of those ar-

ticles. Rev. Stats. U. S., sec. 1256. Nor is the force of the statute broken by the fact that the duties of a retired officer, such as the appellee is, are of an exceedingly limited character, being restricted substantially to drawing his pay, reporting his place of residence to the War Department monthly, and being assignable to duty at the Soldiers' Home, and, at his own request, to duty as professor in any college; and that, subject to these restrictions, a retired officer of the army may enter into any private business into which he chooses to embark, not inconsistent with his duties to the United States. In the nature of things, some of the articles of war cannot apply to retired officers, for the reason that either in express terms or by necessary implication, they concern the duties of those in active service. But so far as the articles of war can be applicable to the retired officers of the army, the statute unquestionably makes these latter subject to them and to all the processes of the military law for all offences committed by them in violation of those articles.

Now it cannot reasonably be doubted that the charges against the appellee in this case are of offences against the military law, of which retired officers, as well as officers in the active service, may be equally guilty. These are: 1. Conduct to the prejudice of good order and military discipline; and, 2. Conduct unbecoming an officer and a gentleman; and the specification under each charge is the statement of the exceedingly intemperate and improper letter written by the appellee to the general commanding the army, which is set forth in full in the appellant's return to the writ served upon him. If there were occasion to conjecture what the purpose of Congress was in holding retired officers of the army to trial by court-martial for infractions of military law, and what the offences were which it was contemplated they might commit, no better illustration could be afforded of the subject than the offences here charged against the appellee. It would be difficult to conceive a case to which the statute would be more appropriate.

The appellee, therefore, being an officer of the army, although on the retired list, and subject as such to trial by court-martial for violation of the articles of war, and the charges against him being for offences against those articles, such as have been stated, his arrest to answer those charges was right and proper.  Actual arrest, or some equivalent of it, is an essential prerequisite under our system of criminal jurisprudence to the exercise of jurisdiction by any court having cognizance of criminal causes.  It is an elementary principle in our law that no man is to be tried for crime in his absence.  The arraignment of an accused person in court to hear the charge against him and to respond to it is essential to give validity to any proceeding thereon against him ; and the only mode known to our law to secure the presence of such accused person for the purpose is by arrest.  It is very true that an accused person may come in and voluntarily surrender himself; and that thereupon a court may proceed without the usual preliminary arrest.  But upon his surrender, he is in fact, and in contemplation of law, under arrest, and subject to detention.  This is the law with reference to offences cognizable by the ordinary tribunals of the common law ; and we see no reason why it should not be held to be the law with regard to offences cognizable by courts-martial.  But we are not left to mere inference in this matter.  For Article 65 of the articles of war specifically provides that " officers charged with crime shall be arrested." It is vain to argue that the term *crime* here is to be taken in the technical sense of a felony ; for no such distinction is justified by the articles of war or by the dictates of reason.

It is very plain to us, therefore, that the appellee, as a retired officer of the army of the United States, was subject to arrest and detention by the military authorities to answer before a court-martial on the charges preferred against him. Nor is this conclusion invalidated in the slightest degree by the proposition laid down by some of the writers on military law to this effect:

" Arrest is not an essential preliminary to a military trial ;

to give the court jurisdiction it is not necessary that the accused should have been arrested ; it is sufficient if he voluntarily, or in obedience to an order directing him to do so, appears and submits himself to trial."

For this means no more than that an officer may, voluntarily, place himself under arrest, just as any person accused of offence under the common law, may come in and submit himself to authority without formal arrest in the regular way.    It would be absurd to conclude that arrest is improper, because the accused might come in voluntarily, or upon mere notice, and submit to trial without arrest.

But it is argued that the arrest of the appellee in this case was illegal, because he was taken by the military authorities from his own house and confined in military barracks belonging to the United States, which constituted the nearest military post.    In this argument it seems to be forgotten that the appellee is not a civilian, but an officer of the army of the United States, subject to trial by court-martial, and to such arrest and detention as will secure his presence before such court-martial.    It might well be questioned whether it would be proper for the military authorities to convert the appellee's residence into a temporary prison for his detention and to station a guard before it.    Such an exercise of the right of arrest might subject the military authorities to grave criticism and censure. If the military authorities had the right under the law and the articles of war to arrest the appellee, as we hold they had, and to detain him for trial before a court-martial, it is not apparent to us how the place of his detention can become a material question so as to affect the validity of the arrest.

Article 65 of the articles of war, already cited, provides as follows :

" Officers charged with crime shall be arrested and confined to their barracks, quarters or tents, and deprived of their swords by the commanding officer.    And any officer who leaves his confinement before he is set at liberty by

his commanding officer shall be dismissed from the service."

There is likewise an army regulation made in pursuance of law which provides that—

"An arrest may be imposed by the order of the commanding officer, given by him in person or conveyed through his staff officer, either orally or in writing. The officer upon whom it is imposed will repair at once to his tent or quarters, and confine himself to the same until more extended limits have been granted."

Both Article 65 and the regulation cited undoubtedly had reference, in the first instance and at the time when they were enacted into law, to officers in the active service; and for the very good reason that at that time there was no provision of law for a retired list. But when Congress thought proper to provide for the retirement of officers, and enacted that such officers, notwithstanding their retirement, should be amenable to the articles of war and subject to trial by court-martial, and therefore necessarily liable to arrest and detention for the purpose of such trial, we cannot say that the act of Congress is inoperative and incapable of being enforced, because retired officers have no "barracks, quarters or tents," in any proper sense of those words, to which they could properly confine themselves or be confined. We cannot argue from these terms that an officer, even in the active service, could not be properly arrested on the march or on the field of battle, because perchance there are no barracks, quarters or tents available for his detention. The logical result of such an argument would be subversive of all military discipline, and destructive of the legitimate purposes for which armies are maintained.

Arrest is one thing; custody or detention, another. Where arrest is authorized, and there is no specifie or sufficient provision for detention, such reasonable means of custody may be used as are available. If there is no jail in a county or judicial district, or none available, a sheriff may confine a prisoner in his own house, or in any other

place which may be reasonably proper under the circumstances for the purpose. And for the same reason, when an officer of the army is arrested who has no barracks, quarters or tents, it is not apparent why he should not be confined in the barracks, quarters or tents most available— those of the nearest military post. The military authorities are entitled to have the custody of his person; and there is no place where they can more properly have that custody than at their nearest military post.

Moreover, even if there is excess or abuse in the mode of the detention of an accused person, it does not follow that the excess or abuse may be remedied by the writ of *habeas corpus*. Such excess or abuse is not without remedy; but it must be a very grave and unusual case that would justify recourse to the writ of *habeas corpus* for the total discharge of the prisoner from all confinement.

It may be that in this case milder measures might have sufficed, or that it might have been wiser to take no notice of the offence of the appellee. Ordinarily, an officer charged with infraction of military law, is not placed in close confinement under guard. As under the common law, bail is taken for most offences, so in the military service an officer's word of honor is regarded as sufficient to insure his presence before a court-martial when required; and consequently his arrest and detention are in general merely constructive. But it cannot reasonably be maintained, either in the common law or in the military law, that strict confinement may not be ordered in proper cases. That, therefore, the military authorities in the present instance thought proper to insist on rigorous action towards the appellee, does not justify us in characterizing that action as either arbitrary or tyrannical. And certainly it does not justify us in applying to harshness or caprice the remedy of *habeas corpus*, where there is the unquestionable right of arrest and detention.

But it is urged, in the next place, that the detention of the appellee, without the existence of charges, invalidated

his arrest and confinement. If by this is meant that, before an officer of the army of the United States can be placed under arrest and held for trial under the articles of war, formal charges in writing, with specifications in due form, such as are set forth in the record in this case, must have been preferred against him, the position is not tenable for a moment. Lord COKE seems to have thought that, at the common law, indictment or information was necessary before there could be a lawful arrest. But that theory was repudiated long ago ; in fact, very soon after it was advanced ; and it has long been the settled law, both of England and the United States, that indictment or information is never required in any case as a prerequisite to arrest and detention. Warrant is required in some cases, with affidavit or other testimony to support it, to justify an arrest ; and in other cases, there may be an arrest without warrant.

There is no reason to hold that it is different in the military law. That law cannot be more jealous of the liberty of its officers than is the common law of the liberty of its citizens. The fact of the commission of apparent crime or offence is the primary ground for arrest in either system of jurisprudence. If, in either system an officer charged with the duty of making arrests has personal knowledge that an offence has been committed, he is entitled to arrest without warrant, or without the issue of formal order to that effect, as the case may be. The exigencies of the military service imperatively demand that, when an offence against the articles of war has been committed in the presence of a commanding officer, he should have the right immediately to place the offender under arrest. Both the general commanding the army and the Secretary of War have that right ; and whether the offence charged against the appellee be regarded as having been committed in the presence of the general commanding the army or of the Secretary of War, in both which capacities General Schofield was acting at the time, it is clear that in either capacity he

was entitled to order the offender under instant arrest. The offence was flagrant. Whatever reason the appellee may have had for thinking that he had justification or provocation for his conduct, his letter on its face was a direct personal insult to his commanding officer, and a most grave offence against the military law committed in the actual presence and in the personal knowledge of that commanding officer; and to hold that that officer was not entitled, if he so thought proper, to take immediate cognizance of it by directing the arrest of the offender would be to nullify the articles of war, to subvert the discipline of the army, and to destroy the efficiency of that body. If the honor of an officer on the retired list requires vindication, it does not seem to us that for that purpose he is entitled to insult his commanding officer with impunity, and to escape arrest therefor and be at large, until specific charges therefor have been formulated and served upon him.

The provisions of Article 71 of the articles of war fully corroborate this view. That article provides that " when an officer is put in arrest for the purpose of trial, the officer, by whose order he is arrested, shall see that a copy of the charges on which he is to be tried is served upon him within eight days after his arrest." Now, if the charges have already been formulated and communicated to him before his arrest, the service of a copy within eight days thereafter would be a work of most useless supererogation.

In this connection, also, the provisions of the Fifth and Sixth Amendments to the Constitution are invoked, which require that no man shall be deprived of life, liberty, or property without due process of law, and that in criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusation against him. But even if it be conceded that these provisions apply to persons in the military service, with regard to which there seems to be some room for question, their requirements are gratified if the arrest has been in accordance

with law and military usages, and formal charges are preferred within a reasonable time after the arrest, which reasonable time the article of war last cited has fixed at eight days.

The plain import of the law we conclude to be:

1. That when an officer in the military service commits an offence against the articles of war in the presence of his commanding officer, or to the personal knowledge of that commanding officer, he may forthwith be ordered under arrest and detained in suitable military custody, and there is no necessity for any formal announcement to him of the nature and cause of the accusation against him; for he already knows it:

2. That where a commanding officer does not act upon his own knowledge, but upon statements communicated to him by others, and he prefers, without personal investigation, to act upon such statements, it is proper that a retired officer should, at or before the time of his arrest, and either verbally or in the order of arrest, be advised of the charge against him; but such charge need not then be formulated; and the failure to notify the accused in an informal way of the nature of the accusation against him does not render the arrest invalid; provided that in due time thereafter, that is, within eight days after the arrest, formal charges are preferred and a copy of the charges is served upon him, according to the requirement of the statute:

3. That when an officer in the military service is arrested by order by his commanding officer, with or without cause assigned at the time, and charges in due form are preferred against him within the prescribed time thereafter, the proceeding is regular, and the person so arrested is not entitled to be released upon writ of *habeas corpus*. While this writ may be used to relieve officers in the military service from illegal detention at the hands of their commanding officers or of military tribunals, such use must be with great caution, in view of the special nature of military service and of the contract entered into by those who engage in that ser-

vice, and who thereby deliberately and for a consideration surrender to a great extent their rights and immunities as citizens.

The consideration is further urged upon us that the appellee cannot now properly be returned to the military custody, inasmuch as the time limited for his trial by the articles of war has elapsed, and on account of such lapse those articles require his discharge from arrest. This proposition is advanced under article 71, already cited, which, after the provision in reference to the service of a copy of the charges within eight days after the arrest, heretofore considered, proceeds to enact that the officer causing the arrest shall see that the arrested officer " is brought to trial within ten days thereafter (that is, ten days after the service of charges), unless the necessities of the service prevent such trial; and then he shall be brought to trial within thirty days after the expiration of said ten days." And it adds: " If a copy of the charges be not served, or the arrested officer be not brought to trial, as herein required, the arrest shall cease; but officers released from arrest under the provisions of this article, may be tried, whenever the exigencies of the service shall permit, within twelve months after such release from arrest." It is argued that the proceedings under the writ of *habeas corpus* in no way delayed or hindered court-martial proceedings, that arrest was not essential in order that such proceedings should go on, and that, therefore, the failure of the military authorities to proceed in due time with the trial of the appellee operated to effect his discharge from custody.

We cannot concur in this argument. The arrest and detention of the appellee to answer the charges against him were the proper and necessary steps preliminary to his trial. With some qualifications due to the nature of the service, no more in the military law than in the common law is it proper to proceed with the trial of an accused person in his rbsence. To proceed to the trial of a person upon a charge of crime, who is not present in court, either as the conse-

quence of arrest and detention for the purpose or of voluntary appearance, surrender and submission to the jurisdiction of the court, is a thing utterly unknown to our jurisprudence ; and the voluntary appearance of an accused person under such circumstances is never to be presumed, so as to authorize a court to proceed with his trial. It was necessary, therefore, to secure the presence of the appellee before any trial could be entered upon by a court-martial of the charges against him. Now that presence could not be secured while the accused was in the custody and under the control of a court of common law under the writ of *habeas corpus.* It would have been improper for a court-martial to proceed, while the question of the validity of the arrest, upon which its jurisdiction depended, was in controversy undetermined and pending in the court of common law. And, of course, after the final discharge of the appellee by the court below, as long as its decision stands, the ground of jurisdiction in the court-martial is gone. There could be no trial of the appellee without another arrest.

The service of the writ of *habeas corpus* and the release and discharge of the appellee thereunder operated in law to suspend all further proceedings by the military authorities to bring the appellee to trial, until the matter of the legality of his arrest and detention was duly determined by the courts of common law. In civil proceedings, a writ of injunction against proceedings at law can be made effective through a court of equity against the running of the statute of limitations, notwithstanding the usually inelastic provisions of that statute. When, as in the present instance, it is provided that trial by a court-martial may be had after the lapse of ten days first specified, if the exigencies of the service should prevent a trial within that time, although thereupon another limitation of thirty days is provided, it is very plain that the purposes of justice ought not to be thwarted by the pendency of proceedings procured by the appellee, which had the effect, whether so intended by him or not, if his present contention be correct, to enable him to evade

and escape the trial by court-martial to which otherwise he would have been properly subjected. It cannot be that the issue of a writ of *habeas corpus* can thus be made to defeat the ends of justice and to nullify the requirements of the military law, which, after all, is as much part of our jurisprudence as is the common law itself, although necessarily more rigidly guarded and watched with more jealousy.

It appears in the present case that a copy of the charges against the appellee was duly forwarded by the appellant to the appellee within eight days after his arrest, in accordance with the requirements of article 71 of the articles of war; and in a collateral proceeding, like the present, we are entitled to presume that it was received by the appellee, and that there was the service of charges contemplated by the statute. The appellee had then been taken out of the custody and control of the military authorities; and consequently it might well be held that the time limited by the article for the trial of the accused never commenced to run.

But in whatever aspect we view this question, it is clear to us that the jurisdiction of the court-martial to try the appellee upon the charges preferred against him is not ousted by the action of the appellee in evading that jurisdiction by suing out a writ of *habeas corpus.* And inasmuch as the custody of the person of the appellee by the military authorities is, as we have held, a necessary and proper preliminary to the exercise of that jurisdiction, it would seem to be no more than just that he should be returned to them.

In conclusion, we are of the opinion that the order of the justice of the Supreme Court of the District of Columbia in this case, releasing and discharging the appellee from the custody of the appellant was erroneous, *and should be reversed, with costs. Accordingly, the cause will be remanded to that court, with directions to vacate that order, to issue its warrant to the marshal of the District of Columbia for the rearrest of the appellee, to discharge the writ of habeas corpus, and to remand the appellee to the custody of the appellant. And it is so ordered.*