UNITED STATES ex rel. SANTANTONIO v. WARDEN OR KEEPER OF NAVAL PRISON IN NAVY YARD, BROOKLYN, N. Y.

(District Court, E. D. New York. November 21, 1919.)

1. Army and navy ⬤➡44(2)—Jurisdiction of court-martial lost by discharge from arrest and release from active service.

A naval court-martial loses jurisdiction to try for an offense committed during active service in the navy by discharge of the offender from arrest without charges having been preferred against him and by subsequent release from active service.

2. Army and navy ⬤➡44(2)—Inactive member of reserve cannot be recalled into service to give court-martial jurisdiction.

A member of the navy, who had been given a certificate of release from active service and of honorable service can be recalled into active service only in conformity with the limitations and regulations on that subject, and cannot be recalled to give the naval court-martial jurisdiction to try him for an offense committed while he was in active service.

Petition for writ of habeas corpus by the United States, on the relation of Michael V. Santantonio, against the Warden or Keeper of the Naval Prison in the Navy Yard at Brooklyn, N. Y. Writ sustained, and relator discharged.

This is a petition for a writ of habeas corpus, filed in behalf of the relator, made returnable November 11, 1919, and by adjournment continued for hearing until November 20, 1919. The return to said writ was made and filed November 13, 1919, by John D. MacDonald, Rear Admiral of the United States Navy, who is the commandant of the Navy Yard, and in whose custody the relator was at the time the writ was issued. The traverse to the return was filed November 19, 1919, and on November 20th the facts were stipulated. In view of the stipulation, it is not necessary to set forth the pleadings. The stipulation is as follows:

First. Michael V. Santantonio enlisted in the Naval Coast Defense Reserve, United States Naval Reserve Force, as chief boatswain's mate, on May 19, 1917, at New York City, N. Y., for a term of your years from that date. The original enlistment and record of Michael V. Santantonio is offered in evidence and received as Government's Exhibit No. 1.

Second. The said Michael V. Santantonio was confined to the prison barracks of the Navy Yard from October 31, 1918, to January 14, 1919, pending an in-

vestigation. Certified copy of record of confinement and release, and letter ordering release, entered in record and marked Relator's Exhibit D¹ and D².

Third. Between March 31, 1919, and April 9, 1919, the said Michael V. Santantonio was ordered to and did perform active duty on the U. S. S. America, a transport under the control and operation of the United States Navy.

Fourth. The said Michael V. Santantonio was placed on the inactive list on April 9, 1919. The orders placing him on the inactive list are offered in evidence, and received and marked Relator's Exhibit A. The certificate of faithful discharge of duty is offered in evidence, and received and marked Relator's Exhibit B.

Fifth. On October 25, 1919, Hon. Josephus Daniels, Secretary of the Navy of the United States of America, sent a letter relative to Michael V. Santantonio, which is offered in evidence, received and marked Relator's Exhibit C.

Sixth. On the 4th day of November, 1919, Michael V. Santantonio was arrested by the authority of the United States Navy and removed to the prison barracks in the Navy Yard, where he still is, and on the 4th day of November, 1919, he was served with a copy of the specifications setting out the crime which the naval authorities alleged Michael V. Santantonio had committed. The said specifications are offered and received in evidence as Government's Exhibit No. 2.

Relator makes no point that return to writ should have been verified and waives such verification on return.

Slade & Slade, of New York City, for relator.

Leroy W. Ross, U. S. Atty., of Brooklyn, N. Y., for commandant of Navy Yard.

THOMAS, District Judge (after stating the facts as above). The relator claims that he is illegally confined in the prison connected with the United States Navy Yard in Brooklyn, and that he was illegally arrested and is unlawfully deprived of his liberty by virtue of his arrest on November 4, 1919, and that the naval authorities are without jurisdiction.

It appears that on May 19, 1917, the relator enlisted in the United States Naval Coast Defense Reserve, and was then given a rating as chief boatswain's mate, and that the period of that enlistment was four years. On October 31, 1918, the relator was arrested and confined in the prison connected with the United States Brooklyn Navy Yard, while the authorities were conducting a certain bribery investigaton, and on the 15th of January, 1919, without any action having been taken respecting the charges, the relator was released and restored to duty.

After the aforesaid arrest, and from March 31, 1919, until April 9, 1919, the relator was ordered to perform and did perform active duty on the U. S. S. America, a transport under the operation and control of the United States government. Finally, on April 9, 1919, the relator was released from active service and received from the proper officer a war service certificate, certifying that the relator "had performed honorable service" from the time of his enlistment to the day of his releaese from active service.

Thereafter the relator entered civil life, and became and was a civilian from April 9, 1919, until November 4, 1919, on which day he was rearrested by the United States naval authorities, and on said day and for the first time was served with specifications setting forth

the nature of the alleged crime, which said specifications were dated August 20, 1919, and charged a violation of certain rules and regulations of the United States Navy while the relator was in active service; this being the same charge upon which he was arrested on October 31, 1918, and released and restored to duty on January 15, 1919.

The question here presented for answer is: Can an enlisted man in the United States Naval Reserve Forces be tried by a navy court-martial for an offense alleged to have been committed while in active service, and be amenable to a court-martial after he has been released from actual service and entered civil life; no charges or specifications of charges having been preferred against him prior to his release from active service?

[1] The answer to this question depends, as I view it, entirely upon the question of whether the jurisdiction which was obtained by the naval authorities by the arrest of October 31, 1918, and which was asserted until January 15, 1919, when the relator was released, was then forfeited or not. In my judgment it was. If the Navy Department had the relator under investigation and confinement during that investigation, and sufficient evidence had been found to justify his presentation to a court-martial, it would be idle to say that under such circumstances the authorities would order his release and restoration to duty. Such officers would have been derelict in their duty, had they not, according to the rules and regulations of the Navy, presented the relator before the court-martial for trial. During this period of time—i. e., from October 31, 1918, to January 15, 1919—the Navy had jurisdiction to deal with the relator in accordance with the rules and regulations of the Navy. But, when he was released and restored to duty, jurisdiction was lost until such time as a new arrest might be made while the relator was in active service, for the only fair inference to be drawn from the fact of his release and restoration to duty, in the absence of any explanation respecting the release of January 15, 1919, must be that the result of the investigation for a period of ten weeks had satisfied the authorities that there was not sufficient evidence against the relator to justify the authorities in further holding him under arrest, or to justify them in presenting him to the navy court-martial for trial.

If there could possibly be any doubt respecting the logical conclusion above expressed, it is completely dissipated by the further action of the authorities under date of April 9, 1919, when the relator received his war service certificate, certifying that he had performed honorable active service from the date of his enlistment until the date of his release from active duty. Certainly then all jurisdiction over the person of the relator was lost, except under the circumstances provided by the rules and regulations, which need not here be specified, as they are not now pertinent.

But further facts appear from the stipulation, which in my judgment made the conclusion herein expressed uncontrovertible. The certificate of release is dated April 9, 1919. The specifications setting forth the alleged crime are dated August 20, 1919, and they were

served on the relator November 4, 1919. It thus appears that the specifications were prepared over four months after the relator had been released from active service and charge the relator with having committed one offense on October 18, 1918, another on October 31, 1918, and still a third on October 18, 1918, all nearly six months prior to his release from active service, and yet the certificate certifies that the relator performed "honorable service" from May 19, 1917, to April 9, 1919. It can be argued that the authorities did not know of the alleged crime, and so could not have filed their charges earlier; but it appears fairly by inference, at least, that they did know the charges were the same, because the charges under investigation from October 31, 1918, to January 15, 1919, were designated on the record as "bribery investigation."

So the conclusion is imperative that the naval authorities lost jurisdiction of the person of the relator on January 15, 1919, when he was "released and restored to duty," and that if jurisdiction still existed, by virtue of the fact that he was still on active duty, then jurisdiction was completely lost on April 9, 1919, when he was discharged from active service.

It is not my purpose, as it is unnecessary, to discuss the opinion expressed in the letter written by the Secretary of the Navy to the commandant of the Brooklyn Navy Yard under date of October 25, 1919, nor the letter of the Attorney General to the Secretary of the Navy in reply to one asking for the opinion of the Attorney General, and under date of July 10, 1919, as neither of these high officials were passing judicially upon the question then propounded.

[2] It is contended by the district attorney that the relator, being under pay of $1 a month, is subject to the jurisdiction of the naval authorities. He is for a very limited purpose, and the limitations are set forth in the rules and regulations. But we are here involved with the fundamental proposition of jurisdiction for a very special purpose. It seems too fundamental to require the citation of authority to support the claim of jurisdiction lost and jurisdiction maintained, because no tribunal can of its own motion assume jurisdiction. Some person must in some legal way invoke it. In the instant case it was lost and it cannot now be regained.

The elaborate and interesting brief filed by the Naval Department, and the authorities cited in it, have been carefully studied, and it is sufficient to say that this ruling is in no wise in conflict with any of the many cases relied upon, because all of them are predicated upon the proposition that, where jurisdiction has once attached, it cannot be divested by mere subsequent change of status, and that this principle justifies the trial and sentence of a person out of the service, where jurisdiction has attached while he was in the service. The fallacy of the claim is apparent. In the cases relied upon, jurisdiction had attached, and had not been lost. Here, when it did attach, it was lost, and cannot now be recovered.

The United States naval authorities had no jurisdiction over the relator, and he can only be recalled into the service in accordance

with the rules and regulations of the Navy, and not for the purpose of giving the navy court-martial jurisdiction.

The writ is sustained, and the relator discharged. Ordered accordingly.