## Ex parte WILSON.

District Court, E. D. Virginia. May 14, 1929.

R. J. McMillan, of San Antonio, Tex., for petitioner.

Paul W. Kear, U. S. Atty., of Norfolk, Va.

GRONER, District Judge. Petitioner, Beverly E. Wilson, was formerly an ensign in the Navy stationed at Newport, R. I. On October 13, 1927, he left his post of duty without leave, and was not again heard of until February 18, 1929, when he was arrested and brought to the Naval Base at Hampton Roads, Va., where he has since been confined awaiting trial by court-martial for desertion from the Navy.

Acting on the recommendation of the Secretary of the Navy, the President, on January 26, 1928, directed that petitioner "be dropped from the rolls of the United States Navy from October 13, 1927."

The question for decision on this petition is whether an officer of the Navy who has been dropped from the rolls pursuant to article 36 (Art. Gov. of the Navy), because of unauthorized absence for a period of three months or more, may thereafter be tried by naval court-martial for such unauthorized absence, where the offense was committed within two years before the order for trial was made.

It was held by the Supreme Court in Carter v. McClaughry, 183 U. S. 365, at page 383, 22 S. Ct. 181, 46 L. Ed. 236, that, where jurisdiction has once attached, it cannot be divested by mere subsequent change of status, and that in such a case a trial and sentence are justified, though the person charged be not then in the service. But that was not the case here. More than a year elapsed between the date of the President's order dropping petitioner from the rolls of the Navy

and the commencement of the prosecution against him. The Carter Case is not therefore determinative of this.

It was stated at bar that the precise question here involved has never been judicially determined. On the other hand, it has been uniformly and consistently held by the administrative officers of the Army and Navy that a person separated from either service thereafter ceases to be amenable to military jurisdiction, and this practice has been approved by separate opinions of five Attorneys General—Toucey (5 Op. Attys. Gen. 55), Cushing (8 Op. Attys. Gen. 328), Knox (24 Op. Attys. Gen. 570), and Palmer (31 Op. Attys. Gen. 520).

█ These opinions are largely based upon the recognition of the fact that a court martial under the laws of the United States is a court of special and limited jurisdiction. It has no jurisdiction beyond that given it by statute, and, since there is no statute giving it jurisdiction over persons not in the military service, it may not assume such jurisdiction either as a matter of convenience or public policy.

The subject is discussed fully and interestingly by Attorney General Palmer in his opinion to the Secretary of Navy, supra.

Since the opinion of Attorney General Palmer, the succeeding Attorney General (March 20, 1923) has advised the Secretary of the Navy that jurisdiction exists to try an enlisted man for desertion after the expiration of the term for which he was enlisted, and to the same effect is the opinion of Judge Garvin in Ex Parte Clark (D. C.) 271 F. 533; and upon the very reasonable ground that, when the offense is the same, the punishment should be measured by the same yardstick, the government now insists upon the applicability of this rule in the case of an officer, but the weakness of the argument grows out of the fact that, in the case of desertion by an enlisted man, no action is taken by the proper authorities of the Army or the Navy to terminate his contract of service. While his desertion continues, he is neither discharged nor dropped from the rolls, and therefore continues subject to military discipline because still, in a limited degree at least, in the military service. And even in those cases in which his term of enlistment has expired, his status with relation to offenses committed while in the service remains unchanged, for the obvious reason that, while not required to serve after the expiration of his enlistment, he is still in the service until formally separated from it by discharge or dismissal. Equally obviously

after the happening of either of these events, he is no longer subject to the jurisdiction of military tribunals for offenses committed while in the service, and is, in such a case, in like position to an officer whose tenure of office has been terminated by law.

█ That the act of the President in causing petitioner to be dropped from the rolls is a final and conclusive determination of his status in the naval establishment cannot be doubted. The language of the act under which the action was taken is clear and convincing. It not only grants the power, but provides that, when exercised, the officer so dropped shall never again be eligible for reappointment. Not only is his present relationship to the Navy terminated, but the ban against him continues so long as he may live. Under such circumstances, to say that, though he is dropped, he is not dismissed, is a play on words, but, whether dropped or dismissed, he is out of the service, and his place filled by another, and the person so dropped has become by virtue of that fact a civilian, and as such may appeal to the civil courts for relief from arrest and trial by a Navy court-martial.

The petitioner will be discharged, but, the United States desiring to appeal, bail in the sum of $2,500, with surety to be approved by the court, will be required, conditioned as is usual in such cases.