### UNITED STATES ex rel. PASELA v. FENNO.

Civ. No. 2174.

District Court, D. Connecticut.

Oct. 17, 1947.

Frank A. Francis, of Hartford, Conn., for petitioner.

Adrian W. Maher, U. S. Atty., and Thomas J. Birmingham, Asst. U. S. Atty., both of Hartford, Conn., for respondent.

SMITH, District Judge.

Relator bases his application for habeas corpus on the claim (1) that he is a civilian and Congress may not Constitutionally place him within the jurisdiction of courts-martial, (2) that the Congress has never extended court-martial jurisdiction to civilian personnel accompanying Naval forces in the continental United States, (3) that he has already been placed in jeopardy for the same offense in the civil courts, (4) that the statute under which he is charged[1] does not cover the offenses for which he was tried by the court-martial, namely, bribery and conduct to the prejudice of Naval good order and discipline, and (5) that as a convicted defendant on probation under a suspended sentence of imprisonment in a civil court he is not subject to the jurisdiction of the Naval court.

It is respondent's contention that a member of the Fleet Reserve, although on an inactive status, is in the Naval Service, and for a crime against the United States is subject to recall to active service for trial by court-martial.

The contention is that a Fleet Reservist is a member of the Naval forces in a pay status, subject to orders, a Naval status distinguishable for disciplinary purposes from other reserve or militia forces of the Navy, Army, or other armed forces.

The Courts have held that one discharged from the services, including the Navy, as well as a reservist of the Army returned to inactive status, is not ordinarily subject to recall to active service for trial for offenses committed, but not prosecuted, during the prior active service.[2] It would appear that such a recall has been provided for, however, by statute in cases of fraud,[3] and in recent years for all offenses committed by Naval Reservists.[4]

In the case at bar, at the time of the offense, relator was a civilian employee and not on active service in his Naval capacity. Unless the Congress intended that a Fleet Reservist be subject to Naval discipline while in inactive status, therefore, the statute allowing recall is not here applicable even if it be held to cover Fleet Reservists who have been on active duty.

Respondent's contention that, at all times material herein, relator has been, as a member of the Fleet Reserve, in the Naval service and subject to court-martial, is based on the Naval Reserve Act of 1938.[5] Unless the Act is beyond the Constitutional powers of the Congress, this contention appears to be well taken since Section 6 of the Act provides that "* * * members of the Fleet Reserve and officers and enlisted men who may have heretofore been transferred to the retired list of the Naval Reserve Force or the Naval Reserve or the honorary retired list with pay or may hereafter be so transferred, shall at all times be subject to the laws, regulations, and orders for the government of the Navy, and shall not be discharged therefrom prior to the expiration of their term of service, without their consent, except by sentence of a court martial, or, in the discretion of the Secretary of the Navy, when sentenced by civil authorities to confinement in a State or Federal penitentiary as a result of a conviction for a felony." It is true that Section 301 of the Act provides as follows: "All members of the Naval Reserve, *when employed on active duty, authorized training duty, with or without pay, drill, or other equivalent instruction or duty, or when employed in authorized travel to or from such duty, or appropriate duty, drill, or instruction, or during such time as they may by law be required to perform active duty, or while wearing a uniform prescribed for the*

---

[1] Articles for the Government of the Navy, Art. 22(a), R.S. sec. 1624, Art. 22(a), 34 U.S.C.A. § 1200, art. 22(a).

[2] United States ex rel. Hirschberg v. Malanaphy, D.C.E.D.N.Y.1947, 73 F.Supp. 990; Durant v. Hironimus, D.C.W.Va. 1947, 73 F.Supp. 79; United States ex rel. Viscardi v. MacDonald, D.C.E.D.N.Y. 1920, 265 F. 695; United States ex rel. Santantonio v. Warden, D.C.E.D.N.Y.

1919, 265 F. 787; Ex parte Drainer, D. C.N.D.Cal.1946, 65 F.Supp. 410, affirmed 9 Cir., 1947, 158 F.2d 981; Ex parte Wilson, D.C.E.D.Va.1929, 33 F.2d 214.

[3] 34 U.S.C.A. § 1200, Art. 14, par. 11.

[4] 34 U.S.C.A. 855, Act of June 25, 1938, c. 690, Title III, sec. 301, 52 Stat. 1180.

[5] Act of June 25, 1938, 75th Cong., 3rd Sess., c. 690, 52 Stat. 1175, 34 U.S.C.A. §§ 771–773, 853 et seq.

*Naval Reserve, shall be subject to the laws, regulations, and orders for the government of the Navy:* Provided, That disciplinary action for an offense committed while subject to the laws, regulations, and orders for the government of the Navy shall not be barred by reason of release from duty status of any person charged with the commission thereof; Provided further, That for the purpose of carrying the provisions of this section into effect, members of the Naval Reserve may be retained on or returned to a duty status without their consent, but not for a longer period of time than may be required for disciplinary action." (Italics supplied.)

Relator's contention is that Section 301 applies to all members of the Naval Reserve, including Fleet Reservists, and grants court-martial jurisdiction over them only for offenses committed while on active duty or the other specified duties enumerated therein. However, such a reading would be inconsistent with Section 6 of the same Act making specific provision for members of that component part of the Naval Reserve known as the Fleet Reserve. The purpose of the legislation may be determined by reference to the Committee Report[6] on the bill, H. R. 10594, which became the Naval Reserve Act of 1938. Page 9 of the Report makes it clear that Section 301 of Title III applies only to the Organized, Merchant Marine and Voluntary Reserves and in the Act itself Title III carries the heading, "Provisions Applicable Only to the Organized Reserve, Merchant Marine Reserve, and Volunteer Reserve."

It follows then that the provision allowing the recall of Naval Reservists for trial[7] does not apply to Fleet Reservists. However, it is not necessary that it should since they may be recalled to active duty at any time during the war. For this purpose the war is not yet over. The provision for recall to active duty during wartime has purposely been left in effect by the Congress to meet the personnel needs of the Navy during the present period between the cessation of hostilities and the conclusion of the peace treaties, pending further consideration of the future status of the Reserves.[8] Indeed, relator might have been recalled for the purpose of trial even if the termination act had been made applicable to the wartime power to call into service Naval Reservists, for the power to recall Fleet Reservists to duty for trial is implicit in the provision of the law making them subject at all times to Naval discipline.

I take it, therefore, that there can be no question but that the Congress, by Section 6 of the Act, intended to make Fleet Reserve and retired personnel in pay status, such as relator herein, subject to discipline as members of the Naval forces even though not in an active duty status. Relator was entitled to draw $2\frac{1}{2}\%$ of his base pay multiplied by his twenty-five years of active service even though in inactive status. The question remains whether such a provision is Constitutional in view of the Constitutional prohibition against criminal prosecution for infamous crime except on presentment or indictment of a grand jury except in cases arising in the Land or Naval forces.[9] Winthrop contends that the Constitution contemplates that a man be wholly a civilian or wholly military so far as court-martial jurisdiction is concerned.[10] There is no court decision upon this point so far as the Naval Reserve Act is concerned. However, similar provisions with reference to retired personnel of the Army have been upheld in the lower courts and at least by implication in the Supreme Court in the Tyler case,[11] and of course the language of Ex parte Milligan,[12] "* * * everyone connected with these

---

[6] No. 2465, Report of the House Committee on Naval Affairs, 75th Congress, 3rd Session.

[7] Title 34 U.S.C.A. § 855, Title III, section 301, of the Act of June 25, 1938.

[8] See Paragraph 141 of the Report of the Senate Judiciary Committee, Senate Report No. 339, June 23, 1947, on S.J. Res. No. 123, which became the Act of July 25, 1947, Public 239, 80th Congress, C. 327, 1st Session, 61 Stat. 449.

[9] United States Constitution, Amendment 5.

[10] 1 Winthrop, Military Law, 2d Ed. 145.

[11] United States v. Tyler, 1881, 105 U. S. 244, 26 L.Ed. 985.

[12] Ex parte Milligan, 1866, 71 U.S. 2, 123, 4 Wall. 2, 123, 18 L.Ed. 281.

branches of the public service is amenable to the jurisdiction which Congress has created for their government", indicates that the Court would broadly construe the Consitutional language, "arising in the Land or Naval forces".

In the history of our military and Naval establishments can be found a long series of expedients adopted to provide for the national defense without depending solely upon large professional military and Naval forces. These expedients have resulted in the creation of many gradations between the purely professional soldier and the purely civilian unorganized militiaman. From the beginning, our dependence has been largely placed upon small professional forces under the Army and Navy provisions of the Constitution [13] and on civilian militia forces of varying size under the militia provision [14] of the Constitution. From the Revolution onward, however, dependence upon the militia has proved costly and dangerous. After every war there have been developments in the direction of stronger national forces and less dependence upon the state militia until today the militia, while having a dual function as state and national troops, is so organized that, when called into federal service, it acts as a national reserve force under the Army and Navy powers of the Congress rather than as state militia serving the nation under the militia clause of the Constitution.

In addition to the militia, both Land and Naval, which have the dual federal-state function, there have also been developed purely national reserve forces, both Army and Navy. Some of these are essentially civilian, required service except in time of war or national emergency, being of short duration, and pay being provided only for active duty performed. To these belong the Naval Reserve components other than the Fleet Reserve.

The Fleet Reserve is on a different pay basis, similar to retired personnel who are subject to call for certain duties, such as retired Army officers who are, or have been, at times subject to assignment to duties at the Soldiers' Home. Members of the Fleet Reserve are subject to call for active duty for a period of not more than two months in any four years, while other Naval Reservists are subject to call for active duty for not more than fifteen days in any one year. The Congress has attempted to keep available for service highly trained men of long experience through the device of the Fleet Reserve, has treated them as civilians so far as their peacetime occupations are concerned, even allowing employment by the Federal Government in civilian pursuits, but has treated them as Naval personnel by continuing them in a pay status as Fleet Reservists and by continuing them under Naval jurisdiction even when not on active duty. It has protected Fleet Reservists in their Naval status by permitting their involuntary dismissal only by court-martial or on imprisonment in a penitentiary upon conviction, by the civil courts, of a felony.

█ I can see no reason to draw the limits of Constitutional discipline of armed forces so narrowly as to include only full-time active service forces. So long as military or Naval status is confined to trained men sought to be kept in a state of readiness for immediate service with substantial pay and substantial peacetime service obligations, to keep them under the jurisdiction of courts-martial to enforce strict military and Naval discipline appears a means reasonably adapted to the military and Naval end the Congress is Constitutionally empowered to reach. Indeed, the necessity appears even greater in the case of Fleet Reservists than in the somewhat parallel case of the retired Army officer, whose amenability to courts-martial has consistently been upheld by the courts.[15]

Relator's second contention is not disputed since no claim is made that Naval court-martial jurisdiction has been extended by the Congress under the Milligan case to civilians accompanying Naval forces within the continental United States nor that the offenses occurred elsewhere than in the continental United States. The validity of this claim as a basis for habeas corpus, however, depends upon the first claim that relator

---

[13] Article I, Section 8, Clauses 12 and 13.

[14] Article I, Section 8, Clause 15.

[15] Compare Runkle v. United States, 1884, 19 Ct.Cl. 396; Closson v. United States, 1896, 7 App.D.C. 460.

was, at the time of the offense and at the time of the arrest, a civilian.

On the third contention that relator is placed in double jeopardy, it is, however, necessary to determine whether the facts essential to support each of the court-martial charges differ in any respect from those necessary to support the charge for which relator has been convicted in the civil court, theft from the United States. If it appears from the pleadings and proof herein that there is an identity between the charge for which relator stands convicted in the civil court and any charge brought against him in the court-martial, then as to that charge the court-martial would lack jurisdiction for, since both courts are courts of the same sovereignty, double jeopardy would exist.[16] However, if jurisdiction exists in the court-martial on either count, relator must fail in his present application since the custody would be legal on that count. It does not appear that either charge is identical with the theft charge upon which the relator was convicted in the District Court. While all the charges grow out of the same set of circumstances, different facts are necessary to prove the charge of bribery from those which are needed to prove the elements of theft. Likewise, with the charge of conduct prejudicial to good order and Naval discipline, more than the facts necessary to prove theft from the Government must be shown, facts which would add the element of likelihood of prejudice to order and discipline.

It would seem that at least so far as the second charge against relator in the court-martial is concerned, there can be no question that the crime is one Naval in nature, since the charge alleges acts prejudicial to good order and Naval discipline. It is for the court-martial to determine whether the facts charged in the specifications and shown by the proof constitute the crime of acts to the prejudice of good order and Naval discipline.[17] Any act by one subject to court-martial, even while in a civilian capacity, likely to bring disgrace upon the Naval service may be held such an offense.[18] Likewise with the charge of bribery, for, although relator was employed in a civilian capacity, the crime charged is alleged to have occurred while he, a person under Naval jurisdiction, was dealing with Naval property and Naval personnel.

It must be held, therefore, that the court-martial has jurisdiction over the offenses charged in the court-martial proceedings.

There remains, however, the question of jurisdiction over the person of this relator during the period of his probation.

It is clear that the Naval court-martial is lacking in jurisdiction over one on probation until the completion of his probation term, unless the jurisdiction of the Court in whose custody he is should be waived by that Court.[19] Ordinarily, of course, one

[16] People of Puerto Rico v. Shell Co., 1937, 302 U.S. 253, 58 S.Ct. 167, 82 L. Ed. 235.

Grafton v. United States, 1907, 206 U.S. 333, 352, 27 S.Ct. 749, 754, 51 L.Ed. 1084, 11 Ann.Cas. 640: "Congress, by express constitutional provision, has the power to prescribe rules for the government and regulation of the Army, but those rules must be interpreted in connection with the prohibition against a man's being put twice in jeopardy for the same offense. The former provision must not be so interpreted as to nullify the latter. If, therefore, a person be tried for an offense in a tribunal deriving its jurisdiction and authority from the United States and is acquitted or convicted, he cannot again be tried for the same offense in another tribunal deriving its jurisdiction and authority from the United States. A different interpretation finds no sanction in the Articles of War; for the 102d Article of War (which is the same as Article 87, adopted in 1806, 2 Stat. at L. chap. 20, 369) declares that 'no person'—referring, we take it, to persons in the Army—'shall be tried a second time for the same offense.' But we rest our decision of this question upon the broad ground that the same acts constituting a crime against the United States cannot, after the acquittal or conviction of the accused in a court of competent jurisdiction, be made the basis of a second trial of the accused for that crime in the same or in another court, civil or military, of the same government."

[17] Carter v. McClaughry, 1902, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236.

[18] Smith v. Whitney, 1886, 116 U.S. 167, 6 S.Ct. 570, 29 L.Ed. 601.

[19] Grant v. Guernsey, 10 Cir., 1933, 63 F.2d 163, certiorari denied 289 U.S. 744, 53 S.Ct. 688, 77 L.Ed. 1491.

Court will waive its right to custody in order that charges brought in another jurisdiction may be tried without undue delay, so long as the defendant's return to the custody of the first Court on disposition of the charges is assured.[20]

Sole jurisdiction in the first Court, unless waived, is a rule of comity, necessary to prevent unseemly struggle for the body of an accused and often called into use in this country because of our dual state and federal judicial system. The same basis for the rule obtains where dual jurisdiction exists in military and civil criminal courts.

However, even though the result may not be entirely logical, it is generally held that the claim of the first Court to sole custody may be waived, and that such a waiver, even though only implied from the first Court's silence or failure to act, cures any defect in the second Court's jurisdiction from a lack of express permission.[21]

Should such a waiver be granted by this Court? Here the civil and Naval offenses are closely allied, arising out of the same transactions. Naval jurisdiction might have been asserted first, but the Navy preferred to call upon the civil authorities to take the first action. The failure to preface the later Naval proceedings by a request for permission of the Court in whose custody relator was, more likely sprang from oversight than from an attempt to defy the authority of this Court.

The claim to sole custody of this relator has not been relinquished by this Court, no request therefor having been made. However, it would appear from the facts presented on this hearing that judgment of a court-martial on charges affecting the fitness for further service of relator should be had since no power exists elsewhere than in a court-martial to order dismissal of a Fleet Reservist from service in the absence of confinement, in a penitentiary, of the relator.

The Naval crimes with which relator is charged should be passed upon by a Naval tribunal. This Court, therefore, waives the failure to ask permission and permits its probation custody to be interrupted for the determination of the Naval charges.

The writ of habeas corpus heretofore allowed may be discharged and relator retained in the custody of the respondent.

Form of judgment in accordance with this opinion may be submitted by counsel for respondent.

---

[20] United States v. Pendergast, D.C.W. D.Mo.1939, 28 F.Supp. 601, 613; United States ex rel. Speece v. Toman, D.C.N.D. Ill.1938, 23 F.Supp. 119.

[21] Cf. Lu Woy Hung v. Haff, 9 Cir., 1935, 78 F.2d 836 (parole); United States ex rel. Feuer v. Day, 2 Cir., 1930, 42 F.2d 127, 128 (parole); Stamphill v. Johnston, 9 Cir., 1943, 136 F.2d 291 (serving sentence); United States v. Pendergast, supra, n. 19.