## HIRONIMUS v. DURANT.
### No. 5713.

Circuit Court of Appeals, Fourth Circuit.
May 4, 1948.

Nicholas R. Voorhis, Lieutenant Colonel, JAGD, of Washington, D. C. (Thayer Chapman, Major, JAGD, of Washington, D. C., Leslie E. Given, U. S. Atty., and A. Garnett Thompson, Asst. U. S. Atty., both of Charlestown, W. Va., on the brief), for appellant.

Hugh H. Obear, of Washington, D. C. (John C. Morrison, of Charleston, W. Va., Orville H. Walburn, of Washington D. C., Jackson, Kelly, Morrison & Moxley, of Charleston W. Va., and Douglas, Obear & Campbell, of Washington, D. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

On September 30, 1946, Captain Kathleen B. Nash Durant, Women's Army Corps, United States Army, was convicted by a general court martial of the larceny in Kronberg, Germany on November 6, 1945, of numerous articles of jewelry and other property belonging to Prince Wolfgang of Hesse and Prince August Wilhelm of Prussia, which had been placed for safe keeping in Kronberg Castle and had come into her possession while she was the officer in charge of the building. She was sentenced to be confined at hard labor for

five years, and pursuant to the sentence, was confined in the Federal Reformatory for Women at Alderson, West Virginia. From this imprisonment she was released on September 10, 1947, upon her petition for a writ of habeas corpus by order of the District Judge who was of the opinion that the court martial was without jurisdiction to try the case. D. C., 73 F. Supp. 79. The question on this appeal is whether a commissioned officer in the Army of the United States, who is on so-called terminal leave, is amenable to military jurisdiction and may be tried and convicted by a general court martial for a violation of the Articles of War, 10 U.S.C.A. § 1471 et seq. committed during his active service, if the terminal leave is revoked before it expires, and the prosecution is thereafter begun.

Captain Durant entered the Army as a private on July 17, 1942; in February of 1943 she became an officer, and on September 4, 1944, she was promoted to the rank of captain. She served in the European theatre from July 1945 to February 1946, and in March 1946, after her return to the United States, she was sent to Camp Beale, California, a separation center. On March 9, 1946, the commanding officer at Camp Beale delivered to her terminal leave orders which stated that she was granted 81 days' leave and 2 days' travel time, at the expiration of which she would be relieved from active duty. They also provided that her appointment as captain in the Army of the United States would continue in force "during the period of present emergency plus 6 months unless sooner terminated." The orders also authorized petitioner to visit Canada and Mexico during her period of terminal leave. The Government concedes that these orders were self-executing and that if nothing further had been done the petitioner would have been relieved automatically from active duty on May 30, 1946.

On May 24, 1946, the War Department, by order of the Secretary of War, issued an order wherein the petitioner's terminal leave was terminated effective May 28, 1946; that portion of the original terminal leave orders which provided that she would revert to inactive service May 30, 1946, was revoked; and she was relieved from assignment to Camp Beale and directed to report to Fort Sheridan, Illinois, on May 29, 1946. Notice of this order was telegraphed to Camp Beale on May 24. Copies of the order were placed in the usual channels for delivery by mail to the petitioner's address in Hudson, Wisconsin, but at the hearing she denied that she received them. She did receive a telegram which was sent on May 24 from the office of the Adjutant General in the War Department to her at the same address and which stated that War Department orders were being mailed to her recalling her to active duty May 29, 1946, and assigning her to Fort Sheridan, Illinois. On May 29 and May 31, 1946, she responded with two telegrams in which she indicated that she did not desire to be recalled to active duty. She did not report to Fort Sheridan, as ordered, and at 2 A.M. on June 3, 1946, she was arrested by military police in Chicago. Thereafter she was taken to Germany where she was tried and convicted by the court martial as above set out.

In the court below, it was conceded that the general court martial was without jurisdiction of the petitioner's case if she had been separated from the armed forces after the commission of the crime and before the prosecution was begun and the trial took place. Certain opinions of the Judge Advocate General and of the federal courts, hereinafter mentioned, were cited as holding that an officer on inactive duty is not subject to the jurisdiction of a military court and may not be recalled to active duty for the sole purpose of court martial proceedings. Accordingly, the inquiry in the District Court was confined to the question whether the petitioner was on active service during her terminal leave and prior to its expiration on May 30, 1946. The District Judge reached the conclusion, which we think to have been erroneous, that her active status came to an end on March 9, 1946, when her terminal leave began, and therefore discharged her from custody.

The Judge Advocate General of the Army has consistently held, as the orders

given the petitioner on March 9 themselves indicated, that an officer, while on terminal leave, remains on active duty. SPJGA 1945/13,372, 14 December 1945. Such an officer is held subject to all the provisions of the Army regulations in respect to discipline; and accordingly, although such an officer who is not a member of the regular army may become a candidate for public office, nevertheless since he is on active duty it is held that he remains subject in the conduct of his campaign to laws and regulations applicable to officers on active duty. SPJGA 1946/2188, 1 March 1946. In his opinion in this case the Judge Advocate General said: "Prior to the expiration of his terminal leave, an Army officer remains an officer on active duty. Consequently, during such leave he remains subject to the laws and regulations governing political activity by officers on active duty." [1]

█ Again it is established that an officer on terminal leave is entitled to receive the hospital benefits and medical treatment which are available to officers on active duty under the statutes and regulations. See 10 U.S.C.A. § 96; Army Regulations 40-405, par. 2b(1); 600-115, paragraphs 15 and 18, (effective November 9, 1945).[2] These regulations declare that terminal leave is an administrative term applied to leave granted a · officer immediately prior to separation from active service and that admission to an Army hospital will automatically rescind so much of the officer's orders as pertains to separation from active duty. In this connection the Judge Advocate General said, JAGA 1946/7249, 9 December 1946: "The mere fact that an officer is on terminal leave and is pursuing a private avocation does not per se remove him from the line of duty or overcome the presumption that an injury incurred by a person in the military service was incurred in line of duty."

So also an officer on terminal leave is entitled during such leave to accrue leave at the rate of 2½ days per month like any other officer on active duty. See SPJGA 1944/6985, 6 July 1944 where the Judge Advocate General said: "The phrase 'terminal leave' is not known either to statutes or Army Regulations[3] but has come generally to be regarded as descriptive of ordinary leave of absence granted officers about to conclude their active service. * * * The mere fact that it is anticipated that a particular officer may shortly be separated from the service or relieved from active duty does not change his duty status prior to such a separation or relief, nor does it alter the character of any leave which may be granted to him."

So also SPJGA 1945/10842, 10 October 1945, where the Judge Advocate General said that "Although an officer of the Army on terminal leave is normally not called upon to perform duty, he is nevertheless in an active duty status and is not, technically speaking, separated from the service or relieved from active duty, as the case may be, until the expiration of his terminal leave."

In addition to these repeated rulings by Army authority consistently promulgated under a variety of circumstances, there is the significant fact that an officer on terminal leave is accorded the full pay and allowances of an officer on active duty. In the instant case, the petitioner drew full pay and allowances as a captain of the Army of the United States on active duty during the month of March, when her terminal leave orders were issued and for each month thereafter through March 1947, when the court martial proceedings were completed and approved in review. These payments were made in accordance with the provisions of 10 U.S. C.A. §§ 841, 842, which provided that officers on duty may be allowed leave of

---

[1] Consistently with this holding that an officer on terminal leave remains subject to Army discipline, petitioner's name was carried on the morning report of the separation center during her period of terminal leave.

[2] These regulations have the force of

law. Gratiot v. United States, 14 How. 80, 117, 45 U.S. 80, 11 L.Ed. 884; Ex parte Reed, 100 U.S. 13, 25 L.Ed. 538.

[3] Army Regulations.605-115 issued subsequent to this opinion mentions terminal leave by name.

absence in the discretion of the Secretary of War and that officers, when absent from duty with leave, shall receive full pay. See United States v. Williamson, 23 Wall. 411, 90 U.S. 411, 23 L.Ed. 89. The propriety of these payments to an officer on terminal leave was recognized by Congress in the passage of the Act of November 21, 1945, Ch. 489, 59 Stat. 584, 5 U.S.C.A. § 61a—1, which amended the Act of August 1, 1941, as amended April 7, 1942, 56 Stat. 200, 5 U.S.C.A. § 61a. These enactments permitted a person who had performed active service in the armed forces to enter the employment of the United States while on terminal leave pending separation or release from active duty, and provided that in addition to compensation for such employment such person should be entitled to receive pay and allowances from the armed forces for the unexpired portion of his terminal leave in the same manner as if he had not entered upon such employment. It was pointed out by the JAG Bulletin, Vol. 5, p. 25, January 1946, and Vol. 5, p. 106, April 1946, that it was the intent of Congress to authorize the benefit provided by these statutes notwithstanding the prohibitions in dual employment and compensation statutes.

 These rulings of administrative officers charged with the execution of the statutes affecting the Army are entitled to great weight. United States v. Cerecedo Hermanos Y Compania, 209 U.S. 337, 339, 28 S.Ct. 532, 52 L.Ed. 821; Bowen v. Johnston, 306 U.S. 19, 30, 59 S.Ct. 442, 83 L.Ed. 455. Indeed it seems that the holdings of the Judge Advocate General in this respect were ratified by Congress in the Armed Forces Leave Act of August 9, 1946, Ch. 931, 10 U.S.C.A. § 18, where it is provided that each member of the armed forces shall be entitled to leave at the rate of two and a half calendar days for each month of active service, and it is expressly directed that "leave taken prior to discharge before or after August 9, 1946, shall be considered as active military service." See also 37 U.S.C.A. § 34; Hastings v. Reynolds Metal Co., 7 Cir., 165 F.2d 484, 487.

Notwithstanding the positive benefits and advantages which are enjoyed by an officer on terminal leave, and which are accorded him only upon the assumption that he is still on active duty, the District Judge found that because the petitioner was not expected to perform active service after March 9, her actual status, as distinguished from her technical status "for pay purposes only", was that of an officer on inactive duty. This holding was not altogether accurate from a factual viewpoint for, as we have seen, substantial consequences other than the continuance of army pay attend an officer on terminal leave; and to those already listed may be added the right of such an officer to wear his uniform, cf. 10 U.S.C.A. § 1028b; to make purchases at post exchanges, to free transportation on military planes when available, and to railroad transportation at reduced rates. Moreover, the argument is beside the point for we are concerned only with the petitioner's status, on which the jurisdiction of the court martial depends, and for this purpose, the reason for the continuance of the petitioner's status, so long as it was lawful, was immaterial. We find no reasonable justification for the view which asserts the existence of an active status so real that an officer may enjoy the accrued leave which he has accumulated, but denies its actuality as a basis for the prosecution of crimes committed during his period of service.

The petitioner seeks to avoid the compelling force of the inference to be drawn from the privileges and liabilities of an officer on terminal leave, all tending to show the continuance of an active status, by picking out certain incidents relating to the terminal leave or the practice followed at the separation and contending that they indicate that her active status ended before her terminal leave was revoked. The opinion of the District Judge was based in large part on these incidents. First of all, there is the fragile contention that the order of May 24, 1946, revoking the terminal leave, did not become effective because it was not delivered to the petitioner before May 30, 1946, when the leave expired, and hence

she was out of the Army before the prosecution began and the jurisdiction of the court martial could attach. It was proved, however, that the petitioner received telegraphic notice of the order of revocation in time, for on May 29, prior to the expiration of her terminal leave on May 30, she responded by wire stating that she did not desire further active duty. It is true that the telegram from the War Department spoke inaccurately of orders "recalling" the petitioner "to active duty" rather than of orders revoking the terminal leave; but it is obvious that the telegram could not affect the true nature of the active status which, according to customary practice, she retained during her terminal leave. The order actually issued by the Adjutant General, as distinguished from the telegram, was of course controlling. It expressly revoked so much of the order of March 9 that stated that the officer should revert to inactive status on May 30, 1946, and the petitioner's answering telegram showed clearly that she was under no misconception as to the nature of her orders. Under these circumstances it is needless to consider whether or not various rulings of the Judge Advocate General that orders are not binding upon Army personnel, until notice thereof is received, are primarily designed to protect personnel against unjustified withdrawal of privileges or subjection to disciplinary action. See CM 211586, May 10, 1939, Vol. 10, 107, 114; JAG Op. 30 and 326.03, March 1934; 3 Bulletin of the JAG 449, 1944, 3 Bull. 16, 1944, 4 Bull. 456, 1945.

Next, it is contended that on August 17, 1946, the petitioner was finally relieved from active duty and the court martial was deprived of jurisdiction because on that date she received through the mail a certificate of service that had been issued at the separation center at Fort Beale. This certificate stated that the petitioner had honorably served in active federal service in the Army of the United States from 23 February, 1943 to 30 May, 1946, and purported to be given at the separation center at Camp Beale in California on 30 May, 1946. On the reverse side of the document were found the details of the military record and report of separation of the officer signed by her and the personnel officer at the center. In the court below this certificate was accepted as "a formal and solemn act on the part of the Adjutant General of the Army which, in the absence of a showing that it was issued through mistake by an unauthorized person, cannot be impeached."

Obviously this holding disregards the realities of the situation and elevates into a position of controlling importance a procedural step erroneously taken in a system set up for the convenience of the officer about to be discharged from active service. There is evidence in abundance to show that the certificate was forwarded to the petitioner by mistake. Her terminal leave order had been formally revoked on May 24; she had been notified thereof on or before May 29; she had been arrested on June 3, and had been confined on serious charges since that date. Charges had been preferred against her on June 8, 1946; she was transported to Germany in June, where other charges were lodged against her on August 8, 1946 and served upon her and referred for trial on August 10, 1946. All of these circumstances were known to Army authorities and brought out in a trial that attracted widespread notice in the following months. It passes all reasonable belief that the separation center intentionally issued to the petitioner, then under charges preferred by superior authority, of stealing property of great value from citizens of an occupied country, a certificate that she had honorably served in the Army of the United States during the period when the theft was alleged to have occurred.[4]

If, however, we should adopt the view of the District Court that orders

---

[4] The Judge Advocate General has held that a certificate of service does not necessarily evidence a complete separation from military service; but if issued through error, it constitutes a misstatement of fact and a record of honorable service to which the recipient is not entitled. SPJGA 1946/1147, January 29, 1946.

affecting the status of an Army officer are not effective until they are received by him, the petitioner's contention with respect to the certificate is equally groundless. The certificate was not received by the petitioner until August 17, 1946, and in the meantime, the petitioner had been arrested, charges had been lodged and referred to trial, and the jurisdiction of the court martial had attached and could not be affected by the subsequent changes in the status of the accused. See, in re Walker, 3 Am.Jurist, 281, Mass.Sup.Ct.; Carter v. McClaughry, 183 U.S. 365, 383, 22 S.Ct. 181, 46 L.Ed. 236; 31 Op.Atty. Gen. 521, 528; Winthrop's Military Law, 1886 Ed. p. 107.

The certificate of service was drawn up as one of the steps in the procedure of separation from the service which was to become effective at the expiration of the terminal leave. See War Department Technical Manuel TM 12-222, 20 September 1945, Separation Center Operations. To this end all details were attended to at the separation center at or about the time the terminal leave orders were signed so as to cause as little inconvenience as possible to the retiring officer and the Army personnel, and so that the officer might be automatically relieved from active service upon the expiration of the leave and would not be required to return again for that purpose to a military center. Thus, before the petitioner left the center, she was given lectures to prepare her for civil life; she was paid one-third of her mustering out pay [5] which, under the statute, 38 U.S.C.A. § 691(a) was payable only to members of the armed forces who had been engaged in active service in the war and had been discharged therefrom under honorable conditions; and in addition, the identification card of the petitioner was perforated with the word "inactive." The orders regulating the leave were signed and delivered on March 9 to take effect on May 30, and on March 9, the petitioner signed the certificate of service in blank so that at the end of the leave, as was customary, it could be mailed to her. Before this date arrived, the revocation orders were sent to the petitioner and to Camp Beale from Washington, and the mailing of the certificate months later was obviously a mistake in routine practice which was easily possible amidst the volume of detail handled in the separation center. See United States v. Landers, 92 U.S. 77, 23 L.Ed. 603; Cf. United States v. Kelly, 15 Wall. 34, 82 U.S. 34, 21 L.Ed. 106.

We hold definitely that the petitioner was on active duty on March 9 and thereafter until her terminal leave orders were revoked during the period of the leave and until the prosecution was begun; and we decide that the court martial therefore had jurisdiction of the case. We do not, however, mean to decide that if the petitioner was relieved from active service by the orders of March 9 and the proceedings above described, the Army command lost the power to restore her to active service so. as to confer jurisdiction upon the Army court. The opposing view is based on certain opinions of the Attorney General of the United States, of the Judge Advocate General, and of the federal courts. Thus it has been held that a person discharged from the Navy or the Army before the commencement of a court martial prosecution against him cannot thereafter be brought to trial before the court martial for crimes committed while he was in active service except as to certain offenses for which the statutes make express provision; and it has also been held that an officer in inactive status may not be restored to active duty so as to subject him to such prosecution. 31 Op.Atty.General 521; Manual for Courts Martial, United States Army, p. 8, paragraph 10; 4 JAG Bull. 35, 1946; United States v. MacDonald, D.C.E.D.N.Y., 265 F. 695; United States v. Warden, D.C.E.D.N.Y., 265 F. 787; Ex parte Wilson, D.C.E.D.Va., 33 F.2d 214; Ex parte Drainer, D.C.N.D.Calif., 65 F.Supp. 410, affirmed Gould v. Drainer, 9 Cir., 158 F.2d 981. Cf. United States v. Malanaphy, D.C.E.D.N.Y., 73 F.Supp. 990, reversed April 9, 1948, 2 Cir., 168 F. 2d 503.

[5] The petitioner subsequently returned this payment on demand of the United States.

The relevancy and authority of these decisions would need to be considered in connection with the facts of the pending case if the finding should be made that the petitioner was relieved from active duty by the order of March 9, 1946. It would then be necessary to decide whether the petitioner as a commissioned officer in the Women's Army Corps, with the status of a member of the Officers' Reserve Corps, could not be called back into active service during the war emergency, and whether a recall for prosecution for crimes committed prior to separation might not be regarded as a recall to active service for a military purpose, i. e., to maintain the discipline and morale of the Army of the United States and the respect in which it should be held in occupied territory.

For the same reason we find it unnecessary to decide whether the case could not be considered as a prosecution for theft in violation of the regulations respecting the laws of war, embodied in the Annex to the Hague Convention No. 4 of October 18, 1907, 36 Stat. 2295, and therefore within the jurisdiction of the court martial under the provisions of Articles of War 12, 10 U.S.C.A. § 1483, which empowers general courts martial to try a private person who, by the law of war, is subject to trial by military tribunals.

Other questions raised by the petitioner are not worthy of extended discussion. We are in agreement with the decision of the District Court and of the Board of Review that there was no substantial failure to comply with the requirements of Article of War 70, 10 U.S.C.A. § 1542, which provides for a preliminary investigation before reference of a charge to a general court martial; and we agree also with these tribunals in their conclusion that there was no want of due process in the trial before the general court martial in the admission into evidence of confessions made by the petitioner prior to trial.

The order of the District Court will be reversed and the case remanded with directions to dismiss the petition for writ of habeas corpus and remand the petitioner to the custody of the respondent.

Reversed and remanded.